## BENJE *vs.* CREAGH'S Adm'r.

1. The action of the Circuit Court in refusing to grant a new trial cannot be reviewed in the Appellate Court.

2. As a general rule, it is the duty of the hirer, in the absence of any express stipulation, to return a slave when the bailment is determined; and on his failure to do so, the bailor may either treat the bailment as ended, and bring his action, or, where the hiring is from year to year or a less time, may consider the bailment as continuing or renewed; and in this class of cases, the question whether the bailment continues is for the jury to determine.

3. The gist of the action of detinue is the *wrongful detention* of the property, and therefore the action cannot be maintained where the holding over was permissive, so long as that kind of possession continues.

4. Where the character of the defendant's possession is in issue, it cannot be proved by general reputation, nor by the opinion of witnesses as to the actual condition of the property.

5. In all cases where the fact of adverse possession is involved, the party claiming such possession must manifest it, by acts which, if brought to the knowledge of the opposite party, would clearly show him that the possession asserted was hostile to his own.

6. Where the defendant acquires and holds possession under the plaintiff, and, upon suit brought after the expiration of six years, attempts to defeat the action by showing adverse possession, the character of that possession must be brought home to the knowledge of the plaintiff; and the jury are not *bound* to infer such knowledge, from the fact that the defendant claimed the property publicly and notoriously under an adverse title.

7. Adverse possession is a question of fact, and the weight of circumstances tending to establish it must be determined by the jury, and not by the court.

Error to the Circuit Court of Mobile.

Tried before the Hon. John Bragg.

The defendant in error, as the administrator of G. W. Creagh, deceased, brought his action of detinue against Benje, the plaintiff in error, to recover certain slaves. The statute of limitations and the general issue were pleaded. The evidence on the part of the plaintiff established a demand, and tended to show that the defendant came into the possession

of the slaves in 1833, by hiring from his intestate, that the hiring continued from 1833 to 1837, and that the defendant, during that period, repeatedly acknowledged the intestate's title.

The defendant introduced a deed of gift to the slaves, made to his daughter in 1825, and proved that the maker of the deed was the owner of the slaves at the time of its execution. A witness, who was closely connected with the family of the defendant. testified, that he had been much in the family, and had always understood that the defendant claimed the slaves as the property of his children. The defendant also offered to prove, that such was the general understanding in the neighborhood where he lived, and that officers had declined to levy executions on the slaves, because they supposed them to be the property of the children, and not of the defendant himself; which evidence was rejected by the court. There was no evidence tending to show that the intestate had actual notice of the adverse claim set up by the defendant to the slaves.

Upon this state of facts, the court charged;

1. That the finding of the jury would depend upon the manner in which the defendant Benje held the slaves; that a hiring constituted a bailment between the parties, and that unless the character of the holding had been changed, the defendant must be considered as a mere bailee;

2. That a bailee could not set up an outstanding title, against the party under whom he held;

3. That six years' adverse possession before suit brought, on the part of the defendant, would constitute a good defence; but to make such possession adverse, it was necessary that he should disavow to the plaintiff's intestate that he held under him, or that his possession should be so notorious as necessarily to put such intestate on his guard; and that unless this was done, the adverse holding on the part of the defendant could only be considered as commencing from the demand made by the plaintiff and the refusal to surrender the property.

The defendant's counsel requested the court to charge: "That if the jury believed that the defendant had peacable and uninterrupted possession of the slaves for more than six

years before the commencement of the action, claiming them as the property of his children publicly and. notoriously for that time, the plaintiff could not recover;" which charge the court refused. The defendant's counsel then requested the court to charge: "That the public and notorious possession of the property was sufficient to furnish a reasonable and *prima facie* presumption of notice;" whereupon the court charged: "That where the possession of property is acquired, and held for a time, in subordination to the title of another, to render it adverse there must be a disclaimer of the original title, and an actual hostile possession of which the owner had notice, or which is so ostensible and notorious, as to furnish a reasonable or *prima facie* presumption of notice."

The jury returned a verdict for the plaintiff; and a motion for a new trial was made by the defendant, on grounds going to the competency of one of the jurors who tried the case, which motion was overruled.

The ruling of the court in rejecting the evidence offered, the charges given, the charges refused, and the overruling of the motion for a new trial, are now assigned for error.

JOHN T. TAYLOR, for plaintiff in error:

The statute of this State declares, that the action of detinue cannot be maintained, unless it is brought within six years after the right accrues. Bailors are not exempt from this statute. The only question in this case is, did the plaintiff's right to the action accrue more than six years before he brought it? If the negro had been loaned indefinitely to Benje, or if hiring had been for an indefinite period, or until demanded, then it would have been a continuous bailment, and the statute would not have commenced running. But this case is very different. Detinue could have been brought by Creagh the next day after the hiring expired in 1837. No demand or notice was necessary. The court erred, therefore, in charging that the statute did not commence running until demand and refusal. 4 How. (Miss.) 204; 12 Ala. 135; 13 ib. 370; 5 Barb. S. C. R. 393.

2. Up to 1837, plaintiff was constant in renewing his notes and demanding a recognition of his claim; from that time, for more than thirteen years, not a word is heard from him,

though the parties knew each other's residence, and must have seen each other every year. No note taken as before; no rent or hire paid; never rendered in by Creagh as his property, or taxes paid by him; no claim in any form. On the other hand, Benje, from that day, seems to have changed his character of holding; never admitted to any one the right of plaintiff. On the contrary, according to Godbold's testimony, held under his children, publicly and on all occasions, with the deed to his children on record all the time in the county where Creagh lived. Now, I contend, that at common law, independent of the statute, his claim had become too stale for recovery. The jury would have the right to presume a subsequent arrangement and purchase by Benje. It is said, in 10 Mass. 119, suppose a demand was necessary, there must be some end to the right of demand. One cannot be allowed to rest for an unreasonable time, until the defendant's evidence is destroyed, and then spring the claim upon him. 5 Barb. S. C. R. 393.

3. The exclusion of the testimony offered by defendant, (under any view of the case,) was clearly wrong. If it was publicly and notoriously known in the neighborhood where Benje lived, that he was claiming the negroes independent of Creagh, for so many years, added to Creagh's own silence during the time, and the other evidence of defendant, it would go far to show that the claim was honest, and the character of bailor and bailee had ended. Besides, it is the very kind of evidence alluded to as sufficient in 16 Ala. 167.

The court's charge in the first instance was erroneous, in requiring us to prove by necessary and certain evidence, that Creagh had knowledge of Benje's adverse holding, when *prima facie* evidence, or evidence sufficient to raise a reasonable presumption of the fact, was enough. And, under all the facts as they were before the jury, the charge asked by the defendant was proper, and ought to have been given.

JOHN A. CAMPBELL, *contra:*

The fidelity which is exacted of a tenant of lands to maintain the title of his landlord, applies with equal force to the hirer of personal property. He cannot set up an adverse title to the owner, from whom he derives possession. Story

Bail. § 450; 4 Mylne & Cr. 178; 7 Bing. 339; 2 B. & C. 540.

2. No length of possession will destroy the title of the owner. 1 Dev. 466; 3 Ired. 210.

3. The possession must be adverse, to entitle the hirer to set up title under the statute of limitations. 3 Ired. *supra;* 4 Georgia R. 75; 9 U. S. Dig. 326, § 140; 16 Ala. 167.

4. The evidence of reputation, and the conclusions and acts of officers, were not admissible in evidence.

It was competent to show acts of Benje indicative of ownership and declarations. by him; provided those were of a nature to reach the plaintiff. The omissions and non-feasance of officers, with an inquiry into the motives of their conduct, are inadmissible. 8 Ala. 650.

GOLDTHWAITE, J.—The action of the court below in refusing to grant a new trial cannot be reviewed in this court. Spence v. Tuggle, 10 Ala. 538.

As to the argument that the right of action accrued at the termination of the hiring, there can be no doubt that a bailor, parting with the possession of his slave for a limited time, has the right to resume the possession of his property at the termination of the bailment; and we think · also, that the general rule in cases of hiring, where there is no stipulation to the contrary, requires the hirer to return the slave on the determination of his term. Story on Bailments, § 414. But this rule is far from being universal in its application, and may be varied by the character of the contract, or other circumstances showing that such was not the intention of the parties. Where the rule does apply, and the hirer, instead of performing the duty devolving upon him, retains the property, the bailor may either treat the bailment as ended, and bring his action; or, where the hiring is from year to year, or a less term, he may consider the bailment as continuing or renewed; and in this class of cases, the question as to whether the bailment continues, is for the jury to determine, upon the facts before them. These conclusions are based upon the analogies of the law, as regulating the relation of landlord and tenant, (Schuesler & Donnell v. Ames, 14 Ala. 600; 16 ib. 73,) the only difference being, that the holding over of the tenant, in cases where it has the effect of renewing the lease,

operates *presumptio juris*, and in case of a bailee, as a circumstance the weight of which is to be determined by the jury. If the holding over was permissive, then, as the gist of the action of detinue is the *wrongful detention* of the property, it follows that the action could not have been maintained, so long as this species of possession continued.

As the character of the possession of the plaintiff in error to the slaves in question was properly in issue, evidence conducing to establish the fact that he held them as the property of his children was admissible, and his own declarations to that effect might legitimately have been offered; but this fact could not be proved by general reputation, and still less by the opinion of individuals as to the actual condition of the property; and there was, therefore, no error in the action of the court, in rejecting evidence of this character.

Neither are we able to perceive any error in the charge, "that the defendant below should have either disavowed to the plaintiff's intestate that he held under him, or that his possession should have been so notorious as necessarily to have put him on his guard." The whole doctrine of adverse possession rests upon the presumed acquiescence of the party against whom it is held; and, if inference and presumption could be resorted to, the right in many cases would be lost without the knowledge that it was usurped. In all cases, therefore, where the fact of adverse possession is involved, it is required on the part of the person so claiming, to manifest the character of his possession by acts which, if brought to the knowledge of the opposite party, would clearly show him that the possession asserted was hostile to his own, Angell on Limitations, 427, and cases there cited; and we do not understand the language used by the court, upon a fair construction, to mean anything more.

Neither was there any error in refusing the charge, that the peaceable and uninterrupted possession by the plaintiff in error of the slaves for six years before the commencement of the suit, claiming them publicly and notoriously, for that length of time, as the property of his children, would entitle him to a verdict. The evidence tended to show that the possession was held in subordination to the intestate of the defendant in error, and in that case the rule is, that the know-

ledge of the character of the possession which is relied on, must be brought home to the party under whom the possession was acquired. Angell on Limitations, 481; Whaley v. Whaley, 1 Spears 225; Ripley v. Yale, 3 Wash. (Vcrm.) 220. This being the law, and the charge requested assuming that the notoriety of the claim of the plaintiff in error operated necessarily as notice to the intestate, it was properly refused.

So also, in relation to the instructions requested, that the public and notorious possession of the property was sufficient to furnish a reasonable and *prima facie* presumption of notice. The character of the possession was a fact to have been submitted to the jury, and it was for them, and not for the court, to determine the weight which should be attached to it, in establishing notice to the intestate of the defendant in error; and the charge, in connection with the refusal of those instructions, was certainly as favorable as the rules which have been laid down by this court entitled him to.

The judgment is affirmed.