## LUCAS *vs.* DANIELS.

[DETINUE FOR SLAVES.]

1. *Form of verdict and judgment for defendant in detinue.*—If the plaintiff in detinue fails to give the bond and affidavit necessary for obtaining the possession of the property sued for, but leaves it in the undisturbed possession of the defendant, he cannot complain on error that the jury, in returning a verdict for the defendant, did not assess the value of the property; nor that the court, in giving judgment for the defendant, did not render judgment for the property or its alternate value, with damages for its detention: section 2194 of the Code is not applicable in such case.

2. *Surrender of title acquired by adverse possession.*—If the husband, having acquired title to a slave by adverse possession against the true owner, verbally consents to the execution of a deed of gift by the latter, conveying the slave to a trustee for the benefit of the husband's wife and children, it is a question for the determination of the jury, whether the husband's prescriptive title is thereby surrendered; and a charge, asserting that such consent would not divest the title acquired under the statute of limitations, is an invasion of their province.

3. *What constitutes adverse possession.*—An open, notorious and public claim of title to a slave in another State, by one who acquired and held possession in this State, up to the time of his removal, in subordination to the title of another, is not sufficient to constitute an adverse possession against the

Lucas v. Daniels.

true owner, who continues to reside in this State : there must be a dis-
claimer of the original title, and an actual hostile possession, of which the
true owner had notice, or which was so ostensible and notorious as to afford
a reasonable presumption of notice.

4. *When outstanding title may be set up as defense.*—In detinue by the surviving
husband, against one of his sons-in-law, the defendant may set up an out-
standing title in a trustee, to whom the slave was conveyed in trust for the
plaintiff's deceased wife for life, with remainder to their children ; and this,
notwithstanding the possession was obtained from plaintiff by stealth or
violence.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THIS action was brought by John Lucas, against John
Daniels, to recover three slaves, to-wit, Caroline, Manuel
and Perry, together with damages for their detention ;
and, on the death of the defendant pending the suit, was
revived against Mrs. Susan Daniels, his widow and ad-
ministratrix. The woman Caroline, who was the mother
of Manuel and Perry, belonged to one Livingston Gard-
ner, in South Carolina, in 1820 ; and in 1821, on plaintiff's
marriage with Nancy Gardner, a daughter of said Living-
ston Gardner, went into plaintiff's possession under a
loan, or parol gift, from said Gardner to him and his wife.
In 1825, plaintiff removed, with his family, from South
Carolina to Dallas county, Alabama, and brought said
negro woman with him ; and Livingston Gardner removed
soon afterwards, and settled in the same neighborhood
with the plaintiff. On the 10th November, 1830,
Livingston Gardner, with the consent and approbation
of plaintiff, conveyed the woman Caroline, by deed
of gift, to one Littleton Edwards, as trustee, "to and for
the uses and trusts hereinafter expressed—that is to say :
to and for the only proper use and benefit of the said
Nancy Lucas, wife of the said John Lucas, and her heirs
forever; to be used and employed, as the said Littleton
Edwards shall direct, for the benefit of the said Nancy
Lucas during her life, and then, in the discretion of the
said Edwards, or of such person as he shall appoint his
successor, to be used and employed for the benefit of the
heirs of the said Nancy Lucas forever, or, at his election,

sold and divided between them." This deed also contained an express provision, to the effect that "the said John Lucas, husband of said Nancy, shall never have any legal or equitable rights, title or claim to said slave, in any manner whatever." The woman Caroline, with her two children, (the latter being born after the execution of the deed of gift above referred to,) remained in the plaintiff's possession, uninterruptedly, until some time in 1851; when, on his removal to Mississippi, said slaves were carried with him, without objection on the part of said Edwards; and in 1856, (at what precise time does not appear,) were taken from his possession, in Mississippi, by stealth or violence, and were in the defendant's possession at the commencement of the suit,—he having previously married one of the plaintiff's daughters by said Nancy. The plaintiff relied on the title acquired by virtue of his marital rights, his possession, and the statute of limitations of Mississippi; while the defendant seems to have set up the outstanding title in Edwards, the trustee, and a deed from said Edwards to himself, dated the 15th January, 1857, which purported to be executed in pursuance of the power conferred on said Edwards by the deed of gift from Livingston Gardner. Mrs. Nancy Lucas, plaintiff's wife, died in 1833. The bill of exceptions purports to set out all the evidence, but a further statement of it is deemed unnecessary.

"The plaintiff asked the court to instruct the jury, 'that if plaintiff held possession of the slaves sued for, in Alabama, for more than six years, by open, notorious and public claim of title against Livingston Gardner, such holding gave him a title to the property.' This charge the court gave. The plaintiff thereupon asked the court to charge the jury, in connection with said charge, 'that if title was acquired in this way, the deed of gift from Livingston Gardner to Edwards, trustee, &c., even with plaintiff's consent, did not divest plaintiff's title, if plaintiff continued in possession of the slave.' This last charge the court refused to give, and the plaintiff excepted."

"The plaintiff asked the court to charge the jury, also, 'that if plaintiff removed from Alabama to Mississippi in

1851, and carried with him the slaves sued for, and kept them there in his possession until November, 1856, under an open, notorious and public claim of title,—then plaintiff is entitled to recover in this action.' This charge the court also refused to give, and the plaintiff excepted."

"The plaintiff also asked the court to charge the jury, 'that if he had possession in Mississippi of the slaves sued for in this action, and they were taken from him tortiously, and run off to Alabama by John Daniels, (the defendant's intestate,) then the defendant cannot, in this action, set up title in a third person as a defense.' This charge the court also refused to give, and the defendant excepted."

The jury having returned a verdict for the defendant, the court thereupon rendered judgment in his favor, that he go hence and recover of the plaintiff his costs.

The errors now assigned are, the refusal of the charges asked by the plaintiff, and the rendition of judgment on verdict for the defendant.

GEO. W. GAYLE, for appellant.

PETTUS, PEGUES & DAWSON, contra.

A. J. WALKER, C. J.—In this case no bond or affidavit was made by the plaintiff, for the purpose of obtaining possession of the property sued for. The property was left undisturbed in the possession of the defendant. In such a case, that the jury should, in a verdict for the defendant, assess the value of the property, would be useless; and it would have been improper for the court to have given judgment for the defendant, against the plaintiff, for the property, or its alternate value, with damages for the detention. Section 2194 of the Code is manifestly inapplicable to such a case.

[2.] Although the plaintiff, by adverse possession antecedent to the deed from Livingston Gardner to Edwards, had acquired a right to the slaves in controversy; yet it was competent for him to surrender that title to the true owner, without writing; and the fact of his consenting to a conveyance of such slave by the true owner to another,

was evidence strongly conducing to show a surrender of the title by prescription, if any such had accrued to him. It was a question for the jury to determine, whether a surrender of the title by prescription was made; and, in the determination of that question, the evidence conducing to show a consent by the plaintiff to a conveyance by the original owner, was a matter proper for their consideration. If the court had charged the jury, that the plaintiff's consent to the conveyance by the true owner would not divest a title acquired by the statute of limitations, it would have taken from the jury the power of determining the effect of such consent, as evidence conducing to show a surrender of the title by prescription. Such a charge would certainly have invaded the province of the jury, by impressing them with the idea, that they could not, upon the evidence, find that the plaintiff had surrendered whatever title he might have acquired by adverse possession.

[3.] There was evidence in this case conducing to show that the plaintiff held the slaves in subordination to the title of the trustee in the deed of Livingston Gardner; that the slaves were left by the trustee with the plaintiff, for the benefit of his children; and that while holding them in subordination to the trustee, and for the benefit of his children, the plaintiff carried them to Mississippi, with the tacit consent of the trustee, who remained and continued to reside in Alabama. The second charge, which the court refused to give, was properly refused, unless it is a tenable proposition, that after the plaintiff had so held the slaves up to the time of his going to Mississippi, and after his carrying the slaves to Mississippi under the circumstances above stated, a possession by him for the period prescribed in the statute of limitations of that State, under an open, notorious and public claim of title, would vest the plaintiff with the right to the slaves· The principle asserted by this court in Harrison v. Pool, 16 Ala. 174, and Benje v. Creagh, 21 Ala. 156, is at war with that proposition. It is settled by those decisions, that when possession is acquired and held for a time, in subordination to the title of the true owner, then, to

constitute an adverse possession, "there must be a disclaimer of the original title, and an actual hostile possession, *of which the true owner had notice, or which is so ostensible and notorious as to furnish a reasonable or prima-facie presumption of notice.*" The whole doctrine of adverse possession rests upon the presumed acquiescence of the party against whom it is held, and there can be no acquiescence without knowledge.—Cockrell v. Brown, 33 Ala. 38. If the trustee remained and continued to reside in Alabama, while the plaintiff carried the slaves to Mississippi; and the plaintiff, up to the time of carrying them to Mississippi, acknowledged the title of the trustee, it would be incumbent upon him to show that the true owner had actual notice of his hostile possession, or that the hostility of his possession was so ostensible and notorious as to afford reasonable or *prima-facie* presumption of notice. In determining whether or not the notoriety of adverse possession was such as to afford *prima-facie* evidence that it was known to the owner, it would be indispensable to consider the distance of the owner from the place at which such adverse possession was set up, and the fact that it was in another State. If there was a hostile possession in Mississippi, it would be manifestly wrong for the court to presume that it was known to the trustee remaining in the State of Alabama, no matter how public the hostility of the possession may have been in that State. The plaintiff had no right to have the court assert, as a legal proposition, that the possession under the circumstances stated in the charge would vest him with the title.

[4.] By virtue of the trust deed, the use and the right to the beneficial enjoyment of the property embraced in the deed was in the children of Mrs. Lucas after her death. Leaving out of view the question of the effect of the appointment of defendant's intestate by Edwards, if Daniels was the husband of one of the beneficiaries, for whom the property was held in trust, and had possession in right of his wife, he would be so connected with the title of the trustee, that he, or his representative in the event of his death pending the suit, might set it up in defense of his possession. The fact that the possession was obtained by

stealth or violence, from a wrougful possessor, would not destroy the right to set up such title. The court, therefore, did not err in its refusal to give the last charge asked by the appellant.

The judgment of the court below is affirmed.