# Shorter *et al. v.* Smith *et al.*

### *Bill in Equity to enforce Trusts in Lands, and enjoin Commission of Waste by Parties in Possession.*

1. *Statute of limitations, and stale demands ; how taken advantage of, in equity.*— When the case stated in the bill is, *prima facie*, within the statute of limitations, as applied in equity, or offensive to the rules adopted in equity for the discouragement of stale demands, the objection may be taken by demurrer, without plea or answer ; but, when the bill seeks to recover property, real or personal, it does not fall within this rule, unless it shows on its face that there has been a possession, hostile to the title asserted by the complainants, for a period of time which would bar a corresponding legal remedy.

2. *Same ; when equitable relief is barred by.*—Possession is presumed to be rightful, and in subordination to the title, in the absence of averments and proof to the contrary; and where the bill shows an undoubted equitable title in the complainants, and seeks a divestiture of the outstanding naked legal title in the heirs of the deceased trustee, a defendant who is alleged to be in possession, and committing waste, but whose possession is not shown to be hostile to the complainants, cannot, by demurrer, set up the statute of limitations, or the staleness of the complainants' demand, though it appears to be more than thirty years old.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. B. B. McCRAW.

The bill in this case was filed on the 27th March, 1874, by Reuben C. Shorter and Virginia A. Oliver, only surviving heirs at law of Eli S. Shorter (or Eli B. Shorter, as the name is copied indifferently in the transcript), deceased, against the heirs of Elijah Corley, deceased, John J. Smith, B. F. Smith, R. G. Young, McKinney Thomas, and James M. Phillips ; and sought to divest the legal title to certain lands, situated in Tallapoosa county, out of the heirs of the said Elijah Corley, and to have it vested in the complainants by the decree of the court ; and also to enjoin and restrain the other defendants from cutting timber, and otherwise committing waste on the lands. The lands were entered by the said Elijah Corley, in his own name, in the United States land-office at Montgomery, at different times during the year 1835 ; and on the 14th October of that year, he transferred each of the certificates of entry, by written indorsement, to E. Corley & Co., and directed the patents to be issued to them. The bill alleged, that the firm of E. Corley & Co. was engaged in buying and selling lands on speculation, and was composed of said Elijah Corley, Eli Shorter, James H. Shorter, John S. Scott, James S. Moore, and Benjamin P. Tar-

[Shorter et al. v. Smith et al.]

ver; that the said Elijah Corley, notwithstanding his in-
dorsement and transfer of the certificates of entry, directed
the patents to be issued to himself, and they were so issued
in 1837; that during the year 1836, on a settlement between
said Eli Shorter and the other members of the said partner-
ship, all their interest in the said lands "was released and
transferred to him, and he thereby became the equitable
owner of said lands"; and that said Elijah Corley died in
1851. The certificates of entry, with the indorsements there-
on, were made exhibits to the bill. The bill contained, also,
the following allegations : "Your orators charge and aver, on
information and belief, that John J. Smith and B. F. Smith,
who reside in said county of Lee, and Reuben G. Young,
who resides in said county of Tallapoosa, are in possession
of a large portion of said lands, either themselves, or by
others claiming under them, and pretend to have some claim
and right to said lands, or a large portion of them; which
asserted claim and right, your orators aver, on information,
advice, and belief, is unfounded, and subordinate to the right
and title of your orators. Your orators further aver, on in-
formation and belief, that the said John J. Smith, McKinney
Thomas, and James M. Phillips, under some arrangement
and agreement by and between them, have been for some
time, and still are, engaged in cutting a great deal of valua-
ble timber and trees on some portions of said lands, and
wasting and destroying much of said timber ; thus doing
irreparable injury to said lands, and greatly depreciating
their value ; and are supplying stocks for a steam saw-mill
from portions of said lands, the value of which consists very
largely of the standing timber thereon, and this value en-
hanced by contiguity to the town (now called city) of Alex-
andria."

A joint answer to the bill was filed by John J. Smith, B.
F. Smith, McKinney Thomas, and Reuben G. Young, in
which they incorporated a demurrer for want of equity, "and
because the complainants' claim, as set forth and asserted in
their bill, is barred by prescription or presumption, and by
lapse of time ;" and they also pleaded the statute of limita-
tions of twenty years. The chancellor dismissed the bill, on
motion, for want of equity; and his decree is now assigned
as error.

D. CLOPTON, for appellants.

W. H. BARNES, *contra.*

BRICKELL, C. J.—The rule is now well settled, that if

(14)

the case stated in a bill is *prima facie* within the bar of the statute of limitations, or offensive to the peculiar rules which a court of equity adopts for the discouragement of stale demands, objection on that ground may be taken by demurrer; the defendant will not be put to plea, or compelled to make special defense by answer.—*Nimmo v. Stewart*, 21 Ala. 682; *Ragland v. Morton*, 41 Ala. 344; *Johnson v. Johnson*, 5 Ala. 90; *Maury v. Mason*, 8 Port. 211. A case does not fall within the operation of this rule, if the suit is for the recovery of property, real or personal, unless it is apparent, on the face of the bill, that for the period prescribed as a bar to corresponding legal remedies there has been a possession hostile to the title the complainants assert.—*Edsell v. Buchanan*, 2 Vesey, 83; *Brooks v. Gibbons*, 4 Paige, 374.

2. The demurrer is an admission of the truth of the facts which are well pleaded in the bill. Assuming these facts as true, the complainants have a perfect equitable title to the lands in controversy. The legal estate is outstanding in the heirs of Elijah Corley, but it is held in trust for the complainants. It is apparent that, for more than thirty-seven years, the equitable title of the appellants has been subsisting, and they could have demanded from Corley, and his heirs after death, a conveyance of the naked legal title he acquired by the patent issued to him. There is no fact apparent on the bill, indicating that Corley or his heirs have ever disclaimed or repudiated the trust, or asserted the legal title in opposition to the equitable title of the complainants; nor does it appear that there has been, at any time, any actual possession of the lands, or any other possession than such as the law would impute to the title, until the entry of the Smiths and Young. When they entered, is not shown. The only averment is, that they *are, at the filing of the bill*, in possession, and committing waste. What was the character of their entry? Whether the mere intrusion of a trespasser, without claiming or asserting title or right, or under claim of title, is not shown. When an undoubted equitable title is shown, the mere dry legal title outstanding, no presumption can arise, that the possession is inconsistent with, or hostile to it. The possession, if nothing more appears, must rather be presumed rightful, in subordination to, and consistent with the title. In *Ormond v. Martin*, 37 Ala. 598-603, it was said: "The fact of possession was but a link in the claim of title by adverse holding. It is the occupation with an *intent* to claim against the true owner, which renders the entry and possession adverse." The whole doctrine of adverse possession, on which the statute of limitations operates, when applied to property, not only barring remedies,

[McLean v. Presley's Adm'r.]

but working a change of title, is, that for the statutory period there has been a possession, open, notorious, continuous, inconsistent with the title of the true owner. All these elements concur.—*Lucas v. Daniels*, 34 Ala. 188; *Brown v. Cockrell*, 33 Ala. 38. The peculiar doctrine which a court of equity applies to demands deemed stale, rests on the long-continued acquiescence of the party affected, in a possession on which the statute of limitations operates.

The bill does not disclose a possession hostile to the title of the complainants, unless it originated in the entry of Young and Smiths; and the only facts averred, which show the possession succeeding that entry is hostile, are of very recent date. The case made by the bill is not, therefore, within the operation of the statute of limitations; nor is it affected by the mere lapse of time since the complainants acquired the equitable title, and could have demanded a conveyance of the legal title. If facts exist, which show that they have acquiesced in an adverse possession until the statute of limitations would bar a legal title, and a legal remedy for the recovery of the lands, these facts are the proper subject of a plea, or may be incorporated as a defense in the answer.

The sole ground of demurrer was, that the case made by the bill was barred by the statute of limitations, and the lapse of time. It does not so appear; and the decree of the chancellor, sustaining the demurrer, and dismissing the bill, must be reversed, and a decree here rendered, overruling the demurrer, and remanding the cause.

STONE, J., not sitting, having been of counsel.