[Clemmons *et al.* v. Cox *et al.*]

# Clemmons *et al.* v. Cox *et al.*

*Bill in Equity to enforce a Trust and establish Title to Land.*

1. *Vendor and purchaser; vendor holds legal title in trust for vendee after payment of purchase money, and his sale to another conveys no title.* After having paid the consideration for land, and being put in possession under the purchase, a vendee is entitled to a conveyance of title thereto by the vendor, who then holds the naked legal title in trust for the vendee; and a subsequent purchaser, under a quit-claim deed, with notice of said vendee's equities, is entitled to no protection against said equities, but takes subject to the trust.

2. *Purchase at execution sale; sheriff's deed conveys only defendant's interest subject to existing equities.*—The purchaser of land at a sale under an execution acquires only such interest as the defendant in execution had, subject to all pre-existing equities in favor of third persons against the defendant; and the sheriff's deed gives him no higher rights against them than if he bargained for and obtained a quit-claim deed from the execution defendant.

3. *Bill to quiet title and to compel conveyance; its equity not affected by complainant having acquired title by adverse possession.*—The equity of a bill to quiet title to land and to compel a conveyance to the complainant by the holder of the legal title, is not impaired by the fact that the complainant had aquired title by adverse possession, which is good against the defendants.

APPEAL from the Chancery Court of Geneva.

Tried before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellants against the appellees, on February 21, 1896.

The averments in the bill show the following facts: The complainants are the children and heirs at law of James M. Clemmons, deceased. Clemmons died in the year 1862 or 1863. John P. Chalker, before the death of Clemmons, was seized and possessed of the lands described in the third section of the bill, the title to which this suit relates, and said Clemmons was the owner of lands described in section four of the bill. These parties in 1860 entered into an agreement, verbal, so far as appears, for the sale, each to the other, of the lands he owned, or for an exchange of lands, the consideration being, as to each person, for the land he sold or should

[Clemmons *et al.* v. Cox *et al.*]

convey to the other, the land he was to receive in exchange. In consideration of said sale, Clemmons conveyed to said Chalker the lands he sold to him, and Chalker went into the possession of the lands under Clemmons' deed to him, which was in full payment for the lands, described in section three, sold by him to said Clemmons. Under and in pursuance of the contract of sale, the said Chalker put the said Clemmons in the possession of the lands he had sold to him, and for which he had been fully paid; but Chalker never executed to said Clemmons or to complainants a deed to said lands. The lands sold to Clemmons were unimproved, and covered by a dense forest. A portion of the lands were improved by Clemmons after he entered into possession, and he lived on the same for a year, and, afterwards, rented them out to tenants for two years. After the death of Clemmons in the year 1862 or 1863, William Push was appointed his administrator, and took possession of said lands, and rented them out and received rents until sometime in 1864, when he died without having settled his administration; and at that time, all the children of said Clemmons were quite young, except Archibald, who was seventeen years old. After the death of said administrator, no successor in the administration of the estate of Clemmons was ever appointed, and the lands remained unoccupied, no one being in visible control of them, until 1892, and they became practically wild lands, prospectively valuable, mainly, for the timber that was on them. In 1889, one Thomas Justice made some claim to the lands, by reason of having paid the taxes on them for three years, but afterwards, one of the complainants, James M. Clemmons, refunded to Justice all the taxes he had paid, and took a transfer to himself of the tax receipts of said Justice. In 1891, defendant, Henry B. Cox, entered into negotiations with said Chalker for a sale by Chalker to him of said lands, and during the negotiations, said Chalker informed the said Cox of complainants' rights, interest and equities, and disclaimed any right, title or interest in himself to the same. For a long time, said Chalker refused to sell and convey said lands to said Cox, but after repeated efforts by Cox to induce him to execute a deed to him, the said Chalker, being very old, in answer to the importunities of said Cox, on the 30th July, 1891, dis-

[Clemmons *et al.* v. Cox *et al.*]

claiming still any rights in himself, executed to him a quit-claim deed to the lands, which deed was without consideration, or if anything was paid, it was merely nominal. Said Cox took possession of said lands sometime during the middle of January or February, 1892.

It is further averred, that after the execution of said deed to him by said Chalker, the said Cox remained in possession of said lands and now unjustly withholds the same from complainants; that at the time he took possession there was a large amount of timber upon the lands, and said Cox has wasted, cut down, destroyed and sold a large portion of said timber, and is still engaged in so doing; that the principal value of said lands consists in the trees that are on them; that said Cox is insolvent, and the cutting down and removal of the timbers from the lands will work irreparable damage to complainants. It is also stated, that said Cox cultivated a portion of the lands, and has received and enjoyed the rents, income and profits from the same, since he went in possession.

It is further averred, that in April, 1894, Pace & Co. recovered judgment against said Cox in the circuit court of Geneva county, and execution on the judgment was levied by the sheriff of said county on said lands, and he sold them thereunder, to satisfy said judgment, and D. H. Morris, one of defendants, purchased the same for $65, and on the day of sale,—28th May, 1894,—B. F. Pate, the sheriff of said county, conveyed by deed to said Morris, the right, title and interest of said Cox in and to said lands.

The prayer of the bill is that the title to the lands be vested in complainants; that said Chalker be required to execute a deed of conveyance to them; that the quit-claim deed of Chalker to Cox, and the sheriff's deed to said Morris, be set aside, annulled and ordered given up; that a reference be had to ascertain the amount of rents, income and profits derived from said lands by said Cox and Morris, and the value of the timber wasted, cut and sold by said Cox from said lands; that an injunction be issued restraining said Cox and Morris from further cutting, wasting, removing or selling any timber or trees from said lands; and for general relief.

The said John P. Chalker, Henry B. Cox, D. H.

[Clemmons *et al.* v. Cox *et al.*]

Morris and the widow of said Clemons, now Mrs. Martha J. Barton, are made parties defendant to the bill.

Decrees *pro confesso* were taken against said Chalker and Martha J. Barton; and Cox and Morris demurred, but their demurrers were not insisted on, and the chancellor did not pass on them. The defendants moved to dismiss the bill for the want of equity. Upon the submission of the cause upon this motion, the chancellor granted the motion and ordered the bill dismissed. From this decree the complainants appeal, and assign the rendition thereof as error.

CARMICHAEL & THACH and W. O. MULKEY, for appellants.—The lapse of time is a bar to a direct trust as between trustee and *cestui que trust*, at least it will not begin to run before the trust is openly disavowed by the trustee, and this is fully made known to the *cestui que trust.*—*C. & E. I. R. R. Co. v. Hay*, 119 Ill. 493; *Ryder v. Loomis*, 36 N. E. Rep. 836; *Waters v. Travis*, 9 John's Rep. 450; *First Nat. Bank v. Nelson*, 106 Ala. 535; *Miller v. Bear*, 3 N. Y. Ch. 459; *Coffey v. Emigh*, 10 Lawyer's Rep. An. 125; *Welch v. Whelpley*, 4 Amer. St. Rep. 812; *Shorter v. Smith*, 56 Ala. 208; *Ashurst v. Peck*, 101 Ala. 508; *Decouche v. Savetier*, 1 N. Y. Ch. 587.

2. After the payment by Clemmons to Chalker of the entire purchase money, after Chalker had put Clemmons in possession of the land, Clemmon's possession became adverse to that of Chalker.— *Wood v. Montevallo C. & T. Co.*, 84 Ala. 560; 5 Amer. St. Rep. 393; *Newsome v. Snow*, 91 Ala. 641; 24 Amer. St. Rep. 934.

3. Cox can not claim the benefit of the period of stale demand, except from the time that he went into the possession of the land, and to make this a defense, he must continue in the possession for a period of ten or twenty years.—*Meyer Bros. v. Mitchell*, 75 Ala. 478; *Shorter v. Smith*, 56 Ala. 208; *Scruggs v. Decatur Min. & Land Co.*, 86 Ala. 173.

4. Cox is charged with the actual notice of the equities of the complainants by the bill, and the fact that he took a quit-claim deed from Chalker charges him with notice of complainants' equities.—*Shorter v. Smith*, 56 Ala. 208; *McMillan v. Rushing*, 80 Ala. 402; *Tate v. Kramer*, 23 S. W. Rep. 255; *Wood v. Holly Manfg. Co.*, 100 Ala. 327.

5. Morris, in buying at the execution sale against Cox, acquired no greater right or title than Cox had at the time of the sale.—*Goodbar v. Daniel*, 88 Ala. 589; *Lindsay v. Cooper*, 94 Ala. 179.

P. N. HICKMAN, *contra.*—1. When a bill has no equity in it, and from the facts appearing in the bill it cannot be so amended as to give it equity, it is not error for the chancellor to dismiss the bill upon a motion to dismiss for want of equity.—*Kyle v. Mary Lee C. & R. Co.*, 112 Ala. 606; *Scholtze v. Steiner*, 100 Ala. 153.

2. If complainants are not entitled to have decreed a specific performance of the alleged contract; then, under the allegations of the bill, they can have no relief whatever. In this State statutes of limitations are applied and enforced in courts of equity, the same as they are in courts of law.—Code of 1886, § 3419; *Scruggs v. Decatur Min. & L. Co.*, 86 Ala. 173.

3. The bill shows on its face that the contract sought to be enforced was entered into more than thirty-five years before the bill in this case was filed. No part of the contract was in writing. All of the parties complainant were in existence at the time the contract is alleged to have been made, and each of them has long since been twenty-one years of age. No impediment is shown, and no reason is given, for their not having sought the aid of the courts at an earlier date.—Code of 1886, § 2613; *Lockard v. Nash*, 64 Ala. 385; *Nettles v. Nettles*, 67 Ala. 599.

HARALSON, J.—Under the facts averred, the defendant, Chalker, held the title of the land he sold (and which he did convey) in trust for the purchaser, Clemmons, and for complaimants who inherited his title. Having been paid for the lands, and having placed the purchaser in possession, the complainants could, after their father's death, have demanded, at any time, a conveyance from Chalker of the naked legal title remaining in him. He never disclaimed or repudiated this trust, nor did he ever claim or assert the legal title, in opposition to the equitable title of the complainants. On the other hand, as is averred, disclaiming any right of interest in the lands himself, he recognized and admitted the rights and equities of complainants to the same. The ancestor

of complainants, Clemmons, had the possession of said lands during his life, and the complainants after his death, succeeded to his title and possession, which were never disputed until Cox took possession in the year 1892. The quitclaim deed he obtained from Chalker, whatever may have been its consideration—and it is alleged to have been merely nominal—conveyed to him nothing but the mere legal title, remaining in Chalker, subject to all the prior equities of complainants. He was entitled to no protection against these equities. *Wood v. Holly Mfg. Co.*, 100 Ala. 327; *Derrick v. Brown*, 66 Ala. 162; *McMillan v. Rushing*, 80 Ala. 402, 407; *Shorter v. Smith*, 56 Ala. 208.

The rule is well established, that a purchaser with notice, stands in the place of his vendor, and holds his acquired title as a trustee, subject to pre-existing equities and incumbrances.—*Meyer Bros. v. Mitchell*, 75 Ala. 475. So that, Cox having acquired the mere naked legal title to these lands by quitclaim from Chalker, and having full notice of complainants' equitable title, like Chalker, holds his acquired title in trust for complainants.

Nor does the defendant, Morris, the purchaser of the lands at execution sale against Cox, stand in any better attitude towards complainants than Cox stood. The sheriff's deed gave him no higher rights against them than if he had bargained for and obtained a quit-claim deed from Cox. He purchased at his own risk, and he was put on inquiry as to Cox's title, which he bought, subject to all pre-existing equities.—*Goodbar, White & Co. v. Daniel*, 88 Ala. 583, 589; *Thomas v. Glazener*, 90 Ala. 538; *Lindsay v. Cooper*, 94 Ala. 170; *Goetter, Weil & Co. v. Norman Bros.*, 107 Ala. 586, 596.

The bill does not disclose a title hostile to that of complainants, which did not originate in the entry of Cox under his quitclaim deed from Chalker, which entry and possession, as averred, did not commence before January or February, 1892. The case made by the bill is not one, therefore, where complainants have acquiesced in an adverse possession for the length of time, which will bar their equitable title.—*Shorter v. Smith*, 56 Ala. 208, *supra*; *Scruggs v. Decatur Mineral & Land Co.*, 86 Ala. 173.

The fact that the ancestor of complainants, who had paid for the land and been put in possession by the

[Cowart v. Capital City Insurance Co.]

seller, Chalker, and the claimants afterwards, who succeeded to the title and possession of their ancestor, had been in the adverse possession of these lands from the date of their sale in 1860, until the defendant, Cox, entered in 1892, and, therefore, had acquired a title by adverse possession, good against these defendants, does not impair the equity of this bill.

The court erred in dismissing the bill for want of equity.

Reversed and remanded.