5 So.2d 73

**VAN ANTWERP et al. v. VAN ANTWERP
et ux.**

I Div. 158.

Supreme Court of Alabama.
Dec. 18, 1941.

H. M. Aldridge and Smith, Hand & Arendall, all of Mobile, for appellants.

Hamiltons, of Mobile, for appellees.

**FOSTER, Justice.**

This is an appeal from a decree overruling demurrer to a bill in equity. We will consider separately the contentions of appellant, whereby the decree is claimed to be erroneous.

1. Multifariousness:

It is immaterial whether the approach to this contention is on principles which relate to a misjoinder of parties complainant, or misjoinder of causes of action which is multifariousness. The nature of the contention invokes the principles of multifariousness.

The bill was filed jointly by two parties on allegations of transactions by which each under the same (not similar) facts and circumstances transferred to respondent corporation the shares of stock each separately owned in the corporation. They claim that the transfer was procured by the same acts of fraud operating upon them at the same time. They are man and wife, and seek to vacate the single transaction by which upon the same inducement they assigned their stock, separately owned, to the corporation in which they were stockholders. The bill was filed after the new equity rules became effective. See Equity Rule 15, Code 1940, Tit. 7, Appendix, page 1055.

The question of multifariousness is largely addressed to the sound discretion of the court. City of Carbon Hill v. Merchants Bank & Trust Co., 237 Ala. 55, 185 So. 387; Littleton v. Littleton, 238 Ala. 40, 188 So. 902.

It is said in City of Roanoke v. Johnson, 229 Ala. 496, 158 So. 182, that when there are several complainants whose equitable rights depend upon the same conditions, contract and its construction, and like injury and damage are alleged, a decree overruling demurrer for misjoinder of parties and causes will not be reversed.

That statement of the principle has full force here. It is said to be largely a matter of convenience which influences an exercise of the discretion. 19 Amer. Jur. 196, section 254.

While these two complainants own their stock separately, their equitable rights are alleged to be controlled by the same facts and transactions, and the relief sought as to each is of the same nature.

2. The second contention made by appellant is that the bill shows that the trustee in bankruptcy of one of the complainants Garet Van Antwerp owns his interest in the claim in suit, and also that the assignment to Frances Van Antwerp by Garet of the shares she claims was in fraud of his creditors and void as against his trustee in bankruptcy who owns such right as was transferred for administration in bankruptcy.

The allegations of the bill touching this question were made incidentally in connection with and in explanation of the claim of fraud set up in the bill. This fraud is the basis on which complainants claim the right to have their stock restored to them upon a cancellation of its assignment to the respondent corporation. The bill alleged in that connection that a suit was filed by the trustee in bankruptcy of Garet Van Antwerp attacking the validity of the transfer which he had made to his wife of the shares which she claimed. That bill also attacked the claim of the respondent corporation that it had a statutory lien on all the stock on account of a debt which it claimed against Garet Van Antwerp of $78,686.14.

The bill in the instant case then alleged that after respondent corporation had procured the assignment to it of the stock of complainants and had refinanced its own "involvements," it made a settlement in full with the creditors of Garet Van Antwerp and of said suit in equity by the trustee. The bill does not distinctly allege the effect of this settlement on the bankruptcy proceeding, nor that the rights and claims of the trustee became divested by such settlement or other reason why he may not prosecute this suit. But the demurrer does not go to such failure. The bankrupt may maintain suit pending bankruptcy with the approval of the bankrupt court upon certain conditions. Crawford v. Horton, 234 Ala. 439, 175 So. 310; Casey v. Cooledge, 234 Ala. 499, 175 So. 557; Wofford Bond & Mortgage Co. v. Adams, 222 Ala. 527, 133 So. 254; 8 Corpus Juris Secundum, Bankruptcy, § 489, p. 1362.

The trustee does not by the bankruptcy acquire the claim of Frances Van Antwerp in this case, unless the assignment

to her by her husband is vacated as being a fraud upon creditors. But the bill alleges that the suit of the trustee to that end was satisfactorily settled. The bill certainly does not show directly nor by adverse inferences that the trustee owns her rights here asserted. No one but the creditors or their representatives can complain in respect to such claim of fraud. Heidt v. Wallace, 239 Ala. 246, 194 So. 501.

■ The demurrer is not addressed separately to the claim of right of the complainants each to proceed, but to the bill as a whole. If it should be amended in respect to the single share of Garet Van Antwerp as affected by the bankruptcy, the demurrer does not properly present the question now.

3. It is next contended by appellant that the demurrer should have been sustained, because the bill shows that complainants have come into court with unclean hands, in that the basis of the claim is that the transaction was intended to work a fraud, in which complainants were in pari delicto with respondent corporation.

The bill seeks to vacate an assignment which complainants made of their shares of stock to the corporation in which they held such shares, and the basis of their claim is a fraud upon them by the corporation.

The contention of appellant corporation now is that the assertion of the facts which justify that claim by complainants includes recitals showing that the corporation was seeking to have said assignment made to present a colorable front to the Union Central Life Insurance Company with which it was negotiating for a large loan for refunding purposes, and that the insurance company was not satisfied so to deal with the corporation in view of the bankruptcy proceeding against Garet Van Antwerp, and the suit by his trustee to vacate the assignment of the stock to his wife. And before the loan was made, in order to satisfy the insurance company, it was represented that if complainants would cooperate with respondents, their individual rights would be adjusted: that the transfer would be a mere formality and an aid in settling its financial difficulties, all to the advantage of the corporation and complainants by causing a settlement of a suit against it and also the suit of the trustee to set aside the assignment of the stock by Garet Van Antwerp to his wife: that the transfer would only be temporary and stand only until the corporation had succeeded in getting its affairs in order.

The bill also sets up confidential relations between complainants and the president of the corporation who was a trusted brother and who negotiated the transaction. It was a closely owned corporation by the Van Antwerp family. And that he falsely and fraudulently misled, tricked, deceived and defrauded them into making such assignment for that purpose, in full reliance upon his statements and promises, which were never intended to be carried out, and were made with the intent to defraud complainants of said stock.

Appellants have taken a wide range in the discussion of this principle. One contention is that they should have advised the trustee in bankruptcy of the value of this equity and have unclean hands in not doing so, and in permitting defendant to settle with him for the paltry sum of $10,000 when their equity was worth some $65,000.

■ The trustee is not complaining of this. There is no showing that complainants misled him in making the settlement. The right of the trustee is not so simple as is contended. Mrs. Van Antwerp assumed the payment of $78,000 to the corporation as a consideration for the transfer. The fact that she did not pay her husband anything else does not stamp the transaction as voluntary. There was present value by assuming the debt. If that value was less than the value of the stock, that alone is not sufficient to vacate the transaction. For to vacate the conveyance when present value is paid or promised, the question of fraud in fact by the grantor must exist. There must be an intent to hinder, delay or defraud entertained by the grantor of which grantee had notice. The principle of a bona fide purchaser for value has application. Federal Land Bank v. Rowe, 222 Ala. 383, 133 So. 50; Rogers v. Conaway, 226 Ala. 334, 147. So. 152; Hewitt v. First National Bank of Birmingham, 235 Ala. 301, 178 So. 533.

■ The trustee received and accepted $10,000 rather than assume the hazard of such litigation. We see no unclean hands of complainants in so agreeing. Moreover, the unclean hands must be in respect to the controversy between complainants and respondents and not something remotely incidental.

■ It is the transaction between complainant and defendant which must have

such reproachful sting to support the sanction against complainant of unclean hands. Relief will not be denied because of complainant's wrongdoing in the course of another transaction between him and a third person. 19 Amer.Jur. 327, section 473, note 10. The wrongdoing of complainant to bar him from relief on the ground of unclean hands "must have some relation to the rights of the parties (then in litigation) arising out of the transaction." Carpenters' Union v. Citizens' Committee, 333 Ill. 225, 164 N.E. 393, 63 A.L.R. 157.

Again it is thus expressed, "The principle must be confined to misconduct in regard to the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the parties and arising out of the transaction." Foster v. Winchester, 92 Ala. 497, 9 So. 83; Harris v. Harris, 208 Ala. 20, 93 So. 841. See Article by Hon. Horace Stringfellow in July, 1940, issue of "The Alabama Lawyer", pages 248 et seq. on this subject.

This bill does not show that complainants and respondent entered into an unlawful conspiracy on which complainants now base a claim against respondent, by which they defrauded the trustee in bankruptcy. If complainants and respondent overreached him, that does not bar complainants of their equitable right against respondent based upon another transaction.

But it is also claimed that the transaction between complainants and respondent shows that its purpose was to defraud the Union Central Life Insurance Company, and there is invoked the principle that when one person transfers his property to another to defraud his creditors, he cannot later come into court and ask the enforcement of the same contract with such grantee whereby it is to be returned to him. We referred to that principle in Durr Drug Co. v. Acree, 239 Ala. 194, 194 So. 544, and in Murray v. Murray, 240 Ala. 550, 200 So. 559.

But when it is sought to be applied to other situations, the inherent qualities of each transaction in this connection must be clearly analyzed. For it does not exist unless the wrong of the complainant substantially equals that of the defendant. It is founded on the principle of "In pari delicto, potior est conditio defendantis," which means that "where the wrong of the one party equals that of the other, the defendant is in the stronger position." 19 Amer.Jur. 330, section 478. See Harton v. Little, 188 Ala. 640, 644, 65 So. 951, and also the article by Mr. Stringfellow, supra.

So where the consent of the complainant to the transaction thought to defraud another was not entered into voluntarily but was itself procured by the fraud of respondent, he will not be deprived of his right to set up the fraud against the defendant. 19 Amer.Jur. 332, note 16; 27 Corpus Juris 653, notes 69, 70; 23 Amer. Jur. 1005, section 183, notes 9, 11, 12 and 13.

In Hortenstein v. Clark, 232 Ala. 479, 168 So. 564, this Court quotes with approval from 2 Pomeroy Equity showing that if the parties are not in pari delicto, with the same knowledge, willingness and wrongful intent, engaged in the transaction, a court of equity will aid the one who is comparatively more innocent and grant him full affirmative relief, as where one party is innocent as compared with the other, such as where he was induced by imposition, oppression, duress, threats, undue influence, and the like. This of course includes active and actual fraud. See, also, Phillips v. Bradford, 147 Ala. 346, 41 So. 657.

The principle is said to be based on the idea "that to give the plaintiff relief in such case would contravene public morals and impair the good of society. Hence, it should not be applied in a case in which to withhold the relief would to a greater extent offend public morals." 19 Amer.Jur. 332; 23 Amer.Jur. 1005, note 5; A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500.

For one to be prejudiced by his alleged fraud visited upon another, it must have resulted in injury to him upon the basis of some actual value or its equivalent either present or prospective. Kelly v. McGrath, 70 Ala. 75, 45 Am.Rep. 75; Meeks v. Garner, 93 Ala. 17, 8 So. 378, 11 L.R.A. 196; 23 Amer.Jur. 985, section 172.

So one question here is whether the plan to make a better picture for the view of the Union Central Life Insurance Company was intended to work an injury to them, and, therefore, was imbued with moral turpitude. Let us see. The transaction involved an assignment by complainants to respondent corporation of shares of its own capital stock by stockholders indebted

100

to it, and for which a statutory lien existed. It is alleged that the insurance company hesitated to make a large loan when stock was so held by one in bankruptcy. The arrangement was to and did relieve it of the sting as to bankruptcy, and appeared to clear up any possible controversy with a stockholder. But any such controversy is not shown to have in fact impaired the status of the corporation as a debtor. It did not make a false showing of assets subject to debts. True, the plan set up scenery to look better to the imagination of the insurance company. But it is not clear that it created a better legal status between it and defendant corporation. It is certainly not so clear as to stamp the transaction as one with intent to injure the insurance company and show moral turpitude.

 On demurrer to a bill, while certain presumptions against complainant are indulged, there is no presumption of illegality. If there is such illegality defendant must bring it forward. The bill is not subject to demurrer on that claim unless the illegality or unlawful conduct is shown on the face of the bill. McCurry v. Gibson, 108 Ala. 451(6), 18 So. 806, 54 Am.St.Rep. 177.

There is no moral turpitude in a legal sense in inducing action by another which is not prejudicial in any respect. While it may be possible to conceive of some prejudice in this instance the bill does not show it. There is no controversy here with the insurance company. The doctrine of estoppel would probably have full application if necessary to protect it. 19 Amer. Jur. 696, section 68, note 11.

 The result is that the bill does not show that complainants have such unclean hands as to bar them from the assertion of their rights here set up.

4. Another contention urged is that the bill shows on its face that the right or claim is barred by the statute of limitations, citing Code of 1940, Title 7, Section 42.

 But this statute has no field of operation here. It does not prescribe a limitation of one year for suits based on fraud. The one year statute is section 26, Title 7, Code of 1940. We doubt not that it fixes a limitation for an action of deceit. But not in every case in which fraud is involved. The limitation for the recovery of land is ten years (section 20); that for the recovery of personalty is six years (section 21). And all those statutes

apply in equity when the same right is sought to be made available. Code of 1923, section 8955 and 6522; Code of 1940, Title 7, section 31; Kelley v. Woodley, 228 Ala. 401, 153 So. 745; Spragins v. McCaleb, 237 Ala. 658, 188 So. 251; Drummond v. Drummond, 232 Ala. 401, 168 So. 428.

[24] Section 42, Title 7, Code of 1940, does not fix a limitation in the first instance. It does not cut down the limitation fixed in some other statute. It serves no purpose where plaintiff discovered the existence of his right of action as much as one year before it was barred by an appropriate statute. But when plaintiff discovered the existence of his right of action after it has become completely barred or within one year before it is so barred, this statute makes provision for a limitation of one year from the date of such discovery, provided its discovery was concealed by some activity of defendant, amounting to a fraud. And in this connection it is not limited to actions based on fraud. Wood v. Master Schools, 221 Ala. 645, 130 So. 178; Roquemore v. Sovereign Camp, 226 Ala. 279, 146 So. 619; Hudson v. Moore, 239 Ala. 130, 194 So. 147.

 It has been held in many cases by this Court that a suit in equity to set aside a deed to land for fraud where the land is in the possession of the grantee is a *suit to recover land and is controlled by* the ten year statute. Code of 1940, Title 7, section 20; Drummond v. Drummond, supra; Washington v. Norwood, 128 Ala. 383, 30 So. 405; Stoutz v. Huger, 107 Ala. 248, 18 So. 126; Van Ingen v. Duffin, 158 Ala. 318, 48 So. 507, 132 Am.St.Rep. 29.

 So when complainants seek to recover personal property the statute of six years applies in equity as at law, whatever may be the nature of proof to support plaintiff's claim of title. If the claim is that defendant procured a deed by fraud which should be set aside, that claim does not change the nature of the suit so as to prevent it from being one to recover property. Compare Martin v. Branch Bank, 31 Ala. 115.

 But the statute of six years relating to suits to recover personal property is also affected by the doctrine of adverse possession by defendant. Lucas v. Daniels, 34 Ala. 188; Benje v. Creagh's Adm'r, 21 Ala. 151; Brown v. Brown, 5 Ala. 508. And so in equity where the suit is to recover land on some equitable ground, the

limitation of ten years is controlled by the principle of adverse possession. Waddail v. Vassar, 196 Ala. 184, 72 So. 14; Shorter v. Smith, 56 Ala. 208.

In both aspects of the law of the statute of limitations if the possession of defendant originated in recognition of complainants' asserted rights, the statute does not begin to run until defendant repudiates such recognition, of which complainant has notice. For such is the law of adverse possession. Lucas v. Daniels, supra; Benje v. Creagh's Adm'r, supra.

The essence of complainants' claim being to recover personal property, and the assertion of fraud being in the nature of an impediment in the way of that title, the accrual of the right depends upon the time when defendant's possession became adverse, which may or not be at the time when the transfer of the stock was procured by the alleged fraud. The equitable right to set aside a contract because it was procured by fraud accrues at the time when the contract was entered into. But not so when to do so is but a step in the assertion of a claim to property in possession of defendant. So long as complainants are led by defendant to believe that the possession by defendant is in recognition of their right to such property the cause of action for the recovery of the property does not accrue, and adverse possession essential to the statute of limitations as a defense to a suit for that property does not begin to run. So that we are not here controlled by the statute as applied to a suit whose ultimate purpose is to set aside a contract for fraud. Here the ultimate purpose is to recover property and the statute of limitations is not therefore necessarily limited to begin at the time of the transfer sought to be vacated as a step in the road to accomplish such ultimate purpose. Shorter v. Smith, supra; Washington v. Norwood, supra; Waddail v. Vassar, supra.

In the case of Van Ingen v. Duffin, supra, the principle is given full force that such a suit is one to recover property. It was there land, and the opinion observes that the statute is ten years after the cause of action has accrued. But it is also said that it is not a question of adverse possession, but one of the statute of limitations, and that the cause of action accrued at the time the conveyance sought to be vacated was executed. The question was one of pleading in that case, whether the bill of

complaint must show that adverse possession began at the date of the conveyance, to show on it: face that the statute then began to run. Whereas in Shorter v. Smith, supra, the same question was involved and the Court held that the mere possession of land is presumed to be in subordination to the rightful owner, unless it is shown to be open, notorious, continuous and inconsistent with the claim of the true owner. Not so alleging, it was held that the bill did not show on its face a running of the statute of limitations. The same thought is fully carried out in Washington v. Norwood, supra, and in Waddail v. Vassar, supra.

As a general rule, the statute of limitations does not affect the existence of a debt sued for. But as to property, real or personal, "the statute operates on the title, and when the bar is complete the title of the original owner is defeated, and the adverse possessor has a complete title. * * * But in case of a contract, there is no such thing as adverse possession; the remedy alone is affected by the statute and not the debt itself. This distinction is recognized not only by this Court, but in all courts where the question has received judicial investigation. We are therefore compelled to acknowledge the distinction." Jones v. Jones, 18 Ala. 248.

Again: "As applied to suits for personal property adversely held, the statute of limitations does not affect the remedy merely, as in suits for debts, but it acts on the title, operating to transfer it to the possessor." Grunewald Co. v. Copeland, 131 Ala. 345, 30 So. 878.

The case of Van Ingen v. Duffin, supra, states the rule consistently with the others in saying that the statute of limitations of ten years applies to suits to recover land; and that this is a suit to recover land; and that the statute begins to run when the cause of action has accrued: but runs counter to the cases here cited in saying that regardless of adverse possession it begins to run in all instances as soon as the conveyance is made, when the bill seeks to set aside that conveyance as an incident to the recovery of the land. The authorities hold that it begins to run when the possession becomes inconsistent and antagonistic to the rights and claims of complainants, in such manner as to carry notice of it, and when complainants have the immediate right to assert their claim.

In suits to recover property the statute of limitations and the principle of adverse possession are inseparably connected, on the theory that the statute does not begin to run until the possession becomes adverse. The case of Van Ingen v. Duffin, supra, is not to be treated as authority for a different view.

The bill was filed March 28, 1941, which is the date of the commencement of the suit for the purpose of limitations. Code of 1940, Title 7, section 43. It does not allege the date of the transfer of the stock sought to be vacated, nor the date when defendant made known to complainants that it held the stock adversely to the claims of complainants. So that on its face the bill does not show that the suit is barred by limitations. It must so appear to be subject to demurrer on that ground.

We have made analysis of the statute of limitations as here applicable so as to determine whether the bill appears on its face to be barred. We have treated the questions on which appellant seems to rely for a reversal. We do not think they show error in overruling the demurrer.

Affirmed.

GARDNER, C. J., BOULDIN, and LIVINGSTON, JJ., concur.