Bobby N. Floyd and Diversified, Inc. (together referred to hereinafter as "Floyd"), appeal a judgment of the Jefferson County Circuit Court entered on April 12, 2000, dismissing Floyd's complaint against Massey 
Stotser, P.C., and members of the Massey Stotser law firm (all referred to hereinafter as "the firm"). The dismissal was based upon the trial court's holding that the applicable statute of limitations barred Floyd's lawsuit. Floyd filed a motion to alter, amend, or vacate the judgment of dismissal, pursuant to Rule 59(e), Ala.R.Civ.P. The trial court denied that postjudgment motion on June 13, 2000.
On January 5, 2000, Floyd sued the firm, alleging legal malpractice, under the provisions of the Alabama Legal Services Liability Act ("ALSLA"), Ala. Code 1975, §§ 6-5-570 to -581. The complaint alleged that the firm had breached its duty to Floyd and had acted negligently in preparing and drawing six checks that were supposed to have been payable to Bobby Floyd. The complaint alleged that the firm had failed to discover alterations to the checks in a timely manner and had failed to notify Floyd of the alterations until approximately one year after the checks had been issued. The complaint further stated that the firm had negligently added Joel Williams as a payee on the six checks, although Williams, Floyd alleged, was not authorized to receive any money on Floyd's behalf.
The firm, on February 11, 2000, moved to dismiss Floyd's complaint, arguing that under the ALSLA, Floyd's claim was subject to a two-year statute of limitations. See Ala. Code 1975, § 6-5-574(a). In the motion, the firm asserted that it had sent Floyd a letter dated September 3, 1997, and that Floyd's cause of action had accrued, and the limitations period had begun to run, no later than the date on which Floyd had received that letter. To the motion to dismiss, the firm attached a copy of the September 3, 1997, letter, and the firm argued in its motion that because Floyd's complaint had been filed on January 5, 2000, more than two years after Floyd would have received the letter, the statute-of-limitations provision of the ALSLA barred Floyd's lawsuit.
On April 12, 2000, the trial court granted the firm's motion to dismiss, stating:
 "After a review of the facts it is clear that [Bobby Floyd] had full knowledge no later than September 3, 1997, that funds [Floyd] claimed were converted by another. [Floyd's] cause of action accrued at that time. [Floyd's] cause is hereby dismissed with prejudice. Costs *Page 510 
of the Court incurred herein are taxed to [Floyd]. Section 6-5-574(a), Code of Alabama and Michael v. Beasley, 583 So.2d 245 [(Ala. 1991)]."
The only issue presented by this appeal is whether the applicable two-year limitations period had expired before Floyd filed the lawsuit.
The record shows that the firm's September 3, 1997, letter informed Bobby Floyd that six checks written either to him or to Diversified, Inc., a company he owned and controlled, had been altered after they had been issued. These checks had been issued with regard to real-estate-closing transactions involving Floyd and the firm. The letter further informed Bobby Floyd that "on each check, the payee was altered to add `or Joel Williams.'" All of the checks were issued during August and September 1996, and they totaled approximately $31,000.
On December 5, 1997, apparently in response to an oral communication between Floyd's lawyer and the firm, the firm sent another letter to Bobby Floyd. That letter stated that the firm "owe[d] no duty to [Floyd]." Bobby Floyd responded to that letter with a letter dated January 5, 1998, demanding that the firm reissue the six checks to him. The firm responded to Bobby Floyd by letter on the same day, again stating that it owed Floyd no duty.
The trial court granted a motion that was styled as a "motion to dismiss." However, this Court has written:
 "When matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment, Rule 12(b), Ala.R.Civ.P.; this is the case regardless of what the motion has been called or how it was treated by the trial court, Papastefan v. B L Constr. Co., 356 So.2d 158 (Ala. 1978); Thorne v. Odom, 349 So.2d 1126
(Ala. 1977)."
Hornsby v. Sessions, 703 So.2d 932, 937-38 (Ala. 1997). Because in ruling on the motion the trial court considered the exhibits the firm had attached to its motion to dismiss, this Court will review this appeal as an appeal from a summary judgment.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
Floyd argues that the judgment must be reversed, contending that the limitations period prescribed by § 6-5-574(a), Ala. Code 1975, could not have begun to run until the date the firm replied to Bobby Floyd's written demand for the checks to *Page 511 
be reissued. Because the firm's reply was made on January 5, 1998, Floyd argues that the trial court erred in holding that Floyd's cause of action had accrued when Bobby Floyd received the September 3, 1997, letter.
Section 6-5-574(a) sets out the applicable time limitations for filing legal-services-liability actions:
 "(a) All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure; except, that an act or omission or failure giving rise to a claim which occurred before August 1, 1987, shall not in any event be barred until the expiration of one year from such date."
This Court has held that "the time limits imposed by [§ 6-5-574(a)] are to be measured from the date of the accrual of a cause of action and not from the date of the occurrence of the act or omission." Michael v.Beasley, 583 So.2d 245, 252 (Ala. 1991). In discussing the point at which an action "accures," this Court has stated:
 "`The statute . . . will not begin to run until some injury occurs which gives rise to a maintainable cause of action. Garrett v. Raytheon Co., 368 So.2d 516
(Ala. 1979); Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925); West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909). . . . In actions such as the case at bar, the act complained of does not itself inflict a legal injury at the time it is done, but plaintiff's injury only follows as a result and a subsequent development of the defendant's act. "In such cases, the cause of action `accrues,' and the statute of limitation begins to run, `when and only when, the damages are sustained.'" Garrett v. Raytheon Co., 368 So.2d at 519. See also, Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).'"
Cofield v. Smith, 495 So.2d 61, 62 (Ala. 1986) (quoting Payne v.Alabama Cemetery Ass'n, Inc., 413 So.2d 1067 (Ala. 1982)).
However, in the lead opinion in Ex parte Panell, 756 So.2d 862, 865
(Ala. 1999), Justice See, joined by Chief Justice Hooper and Justice Maddox, stated that the Michael and Cofield line of cases had ignored "the significance of the `act or omission or failure' language of § 6-5-574(a)." That lead opinion further stated that "a legal-malpractice cause of action accrues, and the statute-of-limitations period begins to run, when `the act or omission or failure giving rise to the claim' occurs, and not when the client first suffers actual damage." Id. at 868.
Regardless of whether we apply the "accural" approach of Cofield, or the "occurrence" approach advocated by the lead opinion in Panell, the statutory limitations period would have run as to the plaintiffs' cause of action by the time they sued on January 5, 2000. Under the "occurrence" approach suggested in Panell, the occurrences that gave rise to the claims asserted in Floyd's January 5, 2000, complaint had necessarily happened sometime between the original issuance of the checks, in August and September 1996, and the preparation of the letter the firm wrote to Bobby Floyd on September 3, 1997, bringing to his attention the alterations in the name of the payee. Under the "accrual" approach of Cofield, it is undisputed *Page 512 
that Bobby Floyd knew when he received that letter that the proceeds of the six checks had not been remitted to him and that the name of the payee, as written on those checks, had been altered. At that point, Floyd had a right to sue the person who had altered the checks; a cause of action had accrued. See, e.g., Ala. Code 1975, § 7-3-404, concerning impostors and fictitious payees, establishing that the alteration of a check gives rise to a right to sue the person who altered it. See alsoState v. Barclays Bank of New York, 151 A.D.2d 19, 23, 546 N.Y.S.2d 479,482 (1989) (construing U.C.C. § 3-802(1)(b)); and Lincoln Nat'l Bank Trust Co. v. Bank of Commerce, 764 F.2d 392, 398 (5th Cir. 1985). As the trial court stated in its order denying Floyd's postjudgment motion, "it appears . . . that [Bobby Floyd] would have known checks due to him [or Diversified, Inc.] in 1996 had not been received and should have known from the Defendant's letter of September 3, 1997, that his property rights had been damaged." Immediately after Bobby Floyd received the September 3, 1997, letter, Floyd could have sued the firm and the person who had altered the checks. See Ala. Code 1975, § 13A-9-2 et seq., discussing the criminal alteration of instruments, and Martinson v.Cagle 454 So.2d 1383 (Ala. 1984), and Hardie-Tynes Mfg. Co. v. Cruise,189 Ala. 66, 66 So. 657 (1914) (holding that the commission of a criminal act injuring another's person or property gives rise to a cause of action in tort). Hence, his cause of action had "accrued."
The judgment of dismissal is affirmed.
AFFIRMED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.