In December 1999, Marvis Rutledge owed approximately $19,000 in child support and interest. On December 2, 1999, he appeared in the Jefferson County Family Court to defend a contempt petition in Nikitris Y. Threadgill v. Marvis G. Rutledge, *Page 366 
Case No. CS-1990-000603.04-EB ("the child-support case"). He was represented in the child-support case by Glenda Freeman, an attorney employed by the Legal Aid Society of Birmingham. Rutledge, who was unemployed and in a drug-rehabilitation program at the time of the December 2, 1999, contempt hearing, admitted that he owed the child support and interest. The referee conducting the contempt hearing found Rutledge guilty of contempt and placed him in jail pending his payment of the entire child-support arrearage, including interest.
Rutledge remained incarcerated until December 7, 2000. He was released upon payment of $800. Freeman continued to represent Rutledge in the child-support case until August 30, 2001. Rutledge alleges that he asked Freeman if he had any legal recourse against anyone for being incarcerated for over a year; according to Rutledge, Freeman told him that there was no legal recourse available to him.
On September 25, 2001, Rutledge met with another attorney, Gary P. Cody. Upon a discussion of the history of the child-support case, Cody informed Rutledge that he likely did have recourse against Freeman and possibly the family court and the county jail. Rutledge filed a notice of claim against Jefferson County in November 2001. On December 6, 2002, Rutledge sued Freeman, Jefferson County, the Jefferson County Family Court, and three fictitiously named defendants.
Rutledge alleged that Freeman had committed malpractice by failing to ensure that proper procedures that would have led to an earlier release of Rutledge from jail were followed. Freeman filed a motion for summary judgment, arguing that Rutledge's suit was barred by the two-year statute of limitations for actions filed under the Alabama Legal Services Liability Act, Ala. Code 1975, § 6-5-570 et seq. ("the ALSLA"). See Ala. Code 1975, §6-5-574(a). The trial court entered a summary judgment in favor of Freeman on Rutledge's claim relating to acts or omissions between December 2, 1999, and December 7, 2000, based on the statute-of-limitations defense, and it made that judgment final pursuant to Rule 54(b), Ala. R. Civ. P.[1] Rutledge appealed the summary judgment in favor of Freeman[2] to the Alabama Supreme Court, which transferred the appeal to this court pursuant to Ala. Code 1975, § 12-2-7(6).
A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P.; see Lee v. City of Gadsden,592 So.2d 1036, 1038 (Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee,592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer *Page 367 
the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989);see Ala. Code 1975, § 12-21-12(d). See Ex parte General MotorsCorp., 769 So.2d 903 (Ala. 1999); West, 547 So.2d at 871, andBass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989), for further discussion of the application of the summary-judgment standard.
As noted above, Freeman filed a motion for summary judgment relying on the statute-of-limitations issue. Rutledge responded to Freeman's motion, attaching to his response his affidavit and the affidavit of his mother, Dearlene Rutledge. Rutledge stated in his affidavit that he could not contact Freeman by telephone during his incarceration because he was allowed to make only collect telephone calls; in addition, he said that Freeman did not contact him in any way — by telephone, by letter, or in person — during his incarceration. He stated in his affidavit that he requested that his mother contact Freeman on his behalf to find out if and when he might be released from jail and under what terms.
According to Mrs. Rutledge's affidavit, she had difficulty actually speaking with Freeman; Mrs. Rutledge stated that Freeman was unavailable approximately half of the "at least ten" times she telephoned Freeman's office between March or April 2000 and November 2000 and that Freeman returned only one of the telephone calls she placed to the office. In addition, Mrs. Rutledge stated in her affidavit that Freeman seemed angered by Mrs. Rutledge's telephone calls because, Mrs. Rutledge stated, Freeman spoke to Mrs. Rutledge in a hostile tone of voice. Mrs. Rutledge stated in her affidavit that Freeman told her that nothing could be done to get Rutledge released from the jail and that they would have to wait until the family court judge set another hearing. According to Mrs. Rutledge, Freeman finally told her in November 2000 that she would see if she could get Rutledge a hearing before the judge and instructed Mrs. Rutledge to "try and get $500" to see if that amount might be sufficient as a purge amount to get Rutledge released. Later that month, according to Mrs. Rutledge, Freeman informed Mrs. Rutledge that $500 would not be sufficient, but she did not give Mrs. Rutledge a specific amount that would be sufficient. Mrs. Rutledge collected $300 more, which she paid into court in December 2000 to secure Rutledge's release.
According to Rutledge, upon his release he asked Freeman what possible legal recourse he might have as a result of his lengthy incarceration. Freeman allegedly told Rutledge that he had no possible recourse because the judge had the authority to keep him in jail as long as she desired on the contempt charge. Rutledge stated that he did not know that he had any legal recourse against Freeman or others until he consulted with his present attorney on September 25, 2001.
On appeal, Rutledge argues that the trial court erred in finding that his ALSLA action against Freeman was barred by the statute of limitations. He contends, among other things, that the statute was tolled by Freeman's fraudulent concealment of his cause of action against her. We agree, and we reverse the summary judgment.[3]
The parties disagree on when the two-year statute of limitations began to run on Rutledge's claims. Freeman argues that the statute began to run either on the date *Page 368 
of Rutledge's incarceration, December 2, 1999, or on the last possible date on which she could have filed for postjudgment review of the contempt judgment, January 3, 2000. Rutledge, however, concedes that the contempt judgment and his incarceration were warranted; thus, he argues, the statute could not have begun to run on December 2, 1999. Instead, Rutledge argues that Freeman's repeated failure to intercede and to have Rutledge brought to court for periodic review prevented the statute of limitations from beginning to run until the dates of those omissions; however, Rutledge does not specifically state what those dates are.
Adding to the difficulty in determining exactly when the statute of limitations began to run is the state of the law regarding that issue. The supreme court has not definitively determined whether this state applies the "occurrence rule" or the "damage rule" to determine when the statute of limitations on legal-malpractice claims begins to run. See Cofield v. Smith,495 So.2d 61, 62 (Ala. 1986) (determining that the statute governing legal-malpractice actions before the ALSLA provided that the limitations period began to run from the "time that the plaintiff would have first suffered a legal injury for which he would have been entitled to commence an action for damages against the [attorney]," which is known as the "damage rule");Michael v. Beasley, 583 So.2d 245, 252 (Ala. 1991) (construing § 6-5-574(a), a part of the ALSLA, and holding that the applicable limitations period begins to run "from the date of the accrual of a cause of action and not from the date of the occurrence of the act or omission," which is a restatement of the "damage rule"); Ex parte Panell, 756 So.2d 862, 868 (Ala. 1999) (plurality opinion) (concluding that, under the plain language of § 6-5-574(a), "a legal-malpractice cause of action accrues, and the statute-of-limitations period begins to run, when `the act or omission or failure giving rise to the claim' occurs, and not when the client first suffers actual damage," which is referred to as the "occurrence rule" (footnote omitted)); Ex parteSeabol, 782 So.2d 212, 214 (Ala. 2000) (appearing to apply the "occurrence rule" but not determining when the cause of action first accrued because the statute of limitations had been tolled); Floyd v. Massey Stotser, P.C., 807 So.2d 508, 511
(Ala. 2001) (applying both "rules"); Wesson v. McCleave,Roberts, Shields, Green, P.C., 810 So.2d 652, 657-58 (Ala. 2001) (quoting the "occurrence rule" espoused in Ex partePanell but focusing on whether the plaintiff's legal injury was dependent on the outcome of another lawsuit); and Dennis v.Northcutt, 887 So.2d 219, 221-22 (Ala. 2004) (quoting and applying the "occurrence rule" in a case in which only four Justices concurred in the opinion; a fifth Justice concurred in the result of the case, indicating his continued disagreement with the "occurrence rule"). We need not decide when the limitations period on Rutledge's claims began to run under either rule, because we agree with Rutledge that Freeman's statements to both him and his mother regarding her inability to intercede on Rutledge's behalf during his incarceration and Freeman's statements to him regarding his lack of any claim against any entity for his lengthy incarceration served to toll the statute of limitations under § 6-2-3.
Section 6-5-574(a) sets out a two-year limitations period for the commencement of all legal-service-liability actions. Section6-5-574(b) states that
 "[s]ubsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitations for the commencement of actions, namely, Section . . . 6-2-3 . . .; provided, that notwithstanding any provisions of such section, no action *Page 369 
shall be commenced more than four years after the act, omission, or failure complained of. . . ."
The supreme court has recognized that the savings provision of §6-2-3 applies in ALSLA actions. See Dennis, 887 So.2d at 221 n. 4.; Ex parte Seabol, 782 So.2d at 214-15; and Leighton Ave.Office Plaza, Ltd. v. Campbell, 584 So.2d 1340, 1344 (Ala. 1991). Section 6-2-3 reads as follows:
 "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
Although the wording of § 6-2-3 indicates that it applies only to fraud actions, that section and its predecessor have long been held to apply to any cause of action that has been fraudulently concealed from a plaintiff. See Tonsmeire v. Tonsmeire,285 Ala. 454, 457, 233 So.2d 465, 467 (1970); Van Antwerp v. VanAntwerp, 242 Ala. 92, 5 So.2d 73 (1941); and Hudson v. Moore,239 Ala. 130, 133, 194 So. 147, 149 (1940), superseded bystatute on other grounds, as noted in Ex parte Sonnier,707 So.2d 635, 638 (Ala. 1997); see also Dennis, 887 So.2d at 221
n. 4 (indicating that § 6-2-3 applies to toll the statute of limitations in legal-malpractice claims, but not deciding whether § 6-2-3 applied because the six-month tolling provision of §6-5-574(a) applied to make the plaintiff's claim timely).
Despite Freeman's argument to the contrary, § 6-2-3 does not require the applicable limitations period to have expired on the plaintiff's claim; rather, it provides an additional two years for the plaintiff to file an action when the plaintiff discovers the cause of action less than two years before the expiration of the applicable limitations period. See Butler v. Guaranty Sav. Loan, 251 Ala. 449, 451, 37 So.2d 638, 639 (1948); VanAntwerp, 242 Ala. at 100, 5 So.2d at 80. The supreme court stated the purpose of the predecessor to § 6-2-3, which granted plaintiffs an additional one year after the discovery of the fraud to file an action, as follows:
 "Section 42, Title 7, Code of 1940 [the predecessor to § 6-2-3], does not fix a limitation in the first instance. It does not cut down the limitation fixed in some other statute. It serves no purpose where plaintiff discovered the existence of his right of action as much as one year before it was barred by an appropriate statute. But when plaintiff discovered the existence of his right of action after it has become completely barred or within one year before it is so barred, this statute makes provision for a limitation of one year from the date of such discovery, provided its discovery was concealed by some activity of defendant, amounting to a fraud."
Van Antwerp, 242 Ala. at 100, 5 So.2d at 80. In 1985, § 6-2-3
was amended to provide an additional two years during which a plaintiff could file an action. Thus, to paraphrase VanAntwerp, under § 6-2-3 a plaintiff who does not discover his cause of action until two years before its being barred by the applicable statute of limitations has two years from the date he discovers, or should have discovered, the fraud to file his action.
Freeman calls our attention to Williams v. Mertz,549 So.2d 87 (Ala. 1989), in which the supreme court stated that "[s]ection6-2-3 does not even apply to an action until the expiration of the time allowed by the applicable statute of limitations would appear to have created a bar to the suit," Williams,549 So.2d at 88, and that "[§ 6-2-3] does not act as a limit upon an action when the applicable limitations period has *Page 370 
not run." Id. at 89. Those statements run counter to the purpose and operation of the statute as expressed in VanAntwerp. In addition, and even more importantly, based on the fact that § 6-2-3 did not apply to toll the statute of limitations in Williams because there was no statute of limitations to toll in that action to quiet title, Id. at 88-89, the statements quoted above are dicta.
Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981), illustrates how the savings provision of § 6-2-3 works. InRyan, the plaintiff, who on January 8, 1980, had purchased a previously leased automobile relying on the salesman's representation that it delivered a certain gas mileage, sued the car dealership on February 13, 1981. Ryan, 409 So.2d at 785. The dealership argued that the then one-year statute of limitations for fraud barred her action. Id. at 786. The plaintiff alleged that she had discovered that she had been defrauded on February 19, 1980, after having the car serviced because she originally thought it might have a mechanical problem. Id. at 786. She said that she did not realize that the salesman's statements were false until the mechanic told her that the automobile was not designed to and would never get the mileage that had been represented to her. Id. The supreme court reversed the summary judgment based on the statute-of-limitations defense that the trial court had entered in the dealership's favor. Id. The court noted that there existed a question of fact regarding when the plaintiff discovered that her cause of action for fraud existed. Id.
Notably, the one-year statute of limitations had not yet run when the plaintiff in Ryan discovered her cause of action. "Alabama does recognize that a fraudulent concealment by a defendant tolls the running of the statute until the tort or injury is discovered or could have been discovered by due diligence." Garrett v. Raytheon Co., 368 So.2d 516, 521 (Ala. 1979), superseded by statute on other grounds, as noted inJohnson v. Garlock, Inc., 682 So.2d 25, 26 (Ala. 1996). Thus, based upon that general principle and the construction of § 6-2-3
and its predecessor found in cases like Van Antwerp and Ryan, the savings provision of § 6-2-3 extends the statute of limitations for a period of two years after the discovery of the cause of action even if the statute of limitations has not yet run on that cause of action. The reading of the statute urged by Freeman — that the savings provision of § 6-2-3 is not applicable until the statute of limitations has already expired — would make filing suit impossible for a plaintiff who discovers a fraudulently concealed cause of action mere hours before the applicable limitations period is due to expire. Certainly, such a result would not comport with the purposes of tolling principles generally. Thus, we reject Freeman's argument that § 6-2-3 has no application here.
The supreme court has stated:
 "`Where there is evidence reasonably affording an inference as to whether a plaintiff was defrauded, and if so, when the plaintiff discovered the fraud, the case is one for the trier of fact. . . .
 "`"The province of the jury [is] to resolve the conflict in the evidence and to determine whether, on all the evidence, the statute of limitations created a bar to the suit."'"
Ryan, 409 So.2d at 786-87 (quoting Loch Ridge Constr. Co. v.Barra, 291 Ala. 312, 321, 280 So.2d 745, 752 (1973) (quoting in turn Birmingham Bond Mortgage Co. v. Lovell, 81 F.2d 590, 593 (5th Cir. 1936))). In cases involving conflicting evidence on the issue whether the statute of limitations should be tolled until the plaintiff discovers the fraud under § 6-2-3, according to the *Page 371 
supreme court, "[s]ummary judgment . . . is inappropriate and constitutes reversible error." Ryan, 409 So.2d at 787.
Because Rutledge presented affidavits indicating that Freeman misrepresented whether Rutledge had legal recourse for his lengthy incarceration and indicating that he discovered the fraud less than two years before he filed suit, Rutledge has presented evidence sufficient to reach a jury on the issue whether Freeman fraudulently concealed Rutledge's cause of action so as to invoke application of the savings provision of § 6-2-3 to prevent Rutledge's suit against Freeman from being time-barred under §6-5-574(a). Therefore, the trial court's entry of a summary judgment in Freeman's favor based on the statute-of-limitations defense was inappropriate and must be reversed.
REVERSED AND REMANDED.
YATES, P.J., and MURDOCK, J., concur.
THOMPSON, J., dissents, without writing.
PITTMAN, J., dissents, with writing.
[1] The trial court dismissed Rutledge's claims against Jefferson County and the Jefferson County Family Court in the same judgment. However, Rutledge was granted leave to amend his complaint.
[2] Rutledge's notice of appeal names Freeman and the Jefferson County defendants as appellees. However, he argues issues concerning only the summary judgment in favor of Freeman in his brief on appeal. We conclude, therefore, that "he has elected not to pursue [his] claims" against the Jefferson County defendants, because the failure to present and argue an issue in an appellant's brief amounts to a waiver of that issue. Tucker v.Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala. 2003).
[3] In reversing the summary judgment based on the statute-of-limitations issue, we express no opinion on the merits of Rutledge's ALSLA action.