STUART, Justice.
Rodgetta Colvin Jett n/k/a Octavia R. Cantelow-Jett (“Jett”) appeals the summary judgment entered against her by the Jefferson Circuit Court in her legal-malpractice action against attorney James M. Wooten and his law firm, the Law Offices of James M. Wooten, P.C. (‘Wooten P.C.”). We reverse and remand.
I.
On approximately March 13, 2006, Jett was injured when she fell down the stairs while leaving a YMCA facility in Birmingham. On approximately May 6, 2006, she was injured again when a door struck her toe at Brookwood Medical Center (“Brook-wood”) in Birmingham. Jett sought and received medical treatment for injuries suffered in both incidents.
Jett thereafter contacted Wooten, who had represented her in approximately 10 other legal matters over the previous 12-year period, including at least one personal-injury action, to discuss possible claims based on the injuries she had suffered in her accidents at the YMCA and at Brook-wood. On February 20, 2007, Jett executed two substantially identical contracts for legal services with Wooten P.C. — one for the claim against the YMCA and one for the claim against Brookwood — in which Jett agreed to pay Wooten P.C. a percentage of any settlement or judgment obtained in connection with the claims, and Wooten P.C. in return agreed “to make immediate investigation of the claim or claims,” while reserving the right to “withdraw at any time from the case if investigation discloses that there is no liability or no assets or no insurance coverage on the part of the defendant.” The legal-services contracts further provided that Wooten P.C. made no promise or representation “as to the outcome of the claim, claims, or litigation, or as to what sums of money, if any, [Jett] may be entitled to recover.”
On October 25, 2007, Wooten sent Brookwood a letter demanding $25,000 to settle any and all claims Jett had against it as a result of her May 2006 accident. On November 15, 2007, Brookwood responded with a letter denying liability. Wooten asserts that he decided not to pursue a legal action against Brookwood based on the weakness of the case and that he promptly informed Jett via telephone that Brookwood had denied her claim and that he would not be pursuing her claim further; Jett denies that she was notified of either fact.
On February 26, 2009, Wooten sent a letter to the claims administrator for the YMCA’s insurance provider demanding $100,000 to settle any and all claims Jett had against the YMCA as a result of her *852 March 2006 accident. On March 31, 2009, Wooten received a response denying liability and asserting that the statute of limitations applicable to personal-injury claims barred any claims asserted by Jett as a result of her accident. Wooten asserts that he decided not to pursue legal action against the YMCA based on the weakness of the case and that he so informed Jett at approximately this same time. He also asserts that he had previously made the strategic decision to pursue Jett’s case against the YMCA as a breach-of-contract claim instead of a negligence or premises-liability claim and that he accordingly informed Jett at the time he told her he would not pursue legal action that she would have six years from the date of her accident to initiate a breach-of-contract action against the YMCA if she decided to do so. Jett denies ever being told by Wooten that the YMCA had denied her claim or that he had decided not file any action against the YMCA. She also denies ever discussing his decision to pursue her case as a breach-of-contract claim and asserts that she was not a member of the YMCA at the time of her accident and accordingly had no contract with the YMCA that was capable of being breached.
On approximately March 13, 2009, Jett was at the Jefferson County courthouse with regard to an unrelated case when she learned for the first time that Wooten had not filed actions against either the YMCA or Brookwood. By this time, the statute of limitations applicable to personal-injury claims barred any negligence or premises-liability actions against either the YMCA or Brookwood because the two-year period in which to file those claims had expired on March 13, 2008, and May 6, 2008, respectively. In a subsequent deposition, Jett stated that Wooten had previously led her to believe that legal actions against the YMCA and Brookwood had been filed and that her cases were proceeding, testifying: “Wooten kept assuring me that ‘Oh, I filed things; don’t worry about it; everything is going to be fine; you know me, you know me; I filed.’ Giving me the assurances that things had been filed and they haven’t.” On June 4, 2009, Jett wrote Wooten to notify him that she was terminating their attorney-client relationship because of his “poor performance and misleading information,” including his failure to file “papers” in several cases. Jett subsequently contacted the claims administrator who had responded to Wooten’s letter regarding her claim against the YMCA to investigate Wooten’s efforts regarding that claim; in response, she was sent a copy of the letter that had been sent to Wooten denying the YMCA’s liability based upon, among other things, the fact that the two-year statute of limitations for filing a personal-injury action had elapsed.
On December 30, 2010, Jett sued Wooten, asserting breach-of-contract, negligence, and negligent-infliction-of-emotional-distress claims against him based on his failure to file lawsuits on her behalf against the YMCA and Brookwood. However, it appears that Jett failed to serve Wooten for some time. Wooten eventually responded to Jett’s lawsuit on April 12, 2011, by moving for a summary judgment, and, on April 26, 2011, he filed his answer to her complaint. Wooten noted in his answer that Jett’s claims against him, however denominated, were essentially legal-malpractice claims and therefore were governed by the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala.Code 1975 (“the ALSLA”). See Sessions v. Espy, 854 So.2d 515, 522 (Ala.2002) (“[T]he ALSLA applies to all actions against ‘legal service providers’ alleging a breach of their duties in providing legal services.”), and Cunningham v. Langston, Frazer, Sweet, & Freese, P.A., 727 So.2d 800, 803 (Ala.1999) (“[Fjrom a plaintiffs perspective, the ALSLA applies to any claim originating from his receipt of legal services.”). *853 Jett thereafter filed a response opposing Wooten’s summary-judgment motion as well as an amended complaint naming Wooten P.C. as a defendant. On July 7, 2011, the trial court denied Wooten’s motion for a summary judgment.
The two sides thereafter engaged in discovery, serving interrogatories upon each other and taking each other’s deposition. On December 28, 2011, Wooten and Wooten P.C. (hereinafter referred to collectively as “the Wooten defendants”) again moved the trial court to enter a summary judgment in their favor, this time arguing that Jett’s claims against them were themselves barred by the two-year statute of limitations that generally applies to ALS-LA claims. See § 6-5-574, Ala.Code 1975 (“All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards _”). Jett filed a response opposing that motion. A hearing was held on February 2, 2012, and, on February 15, 2012, the trial court entered a summary-judgment for the Wooten defendants, stating:
“The Court finds that the statute of limitations to file [Jett’s] suits expired on March 13, 2008, (YMCA) and May 6, 2008, ([Brookwood]). Therefore, she had until March 13, 2010, and May 6, 2010, to file suit against [the Wooten defendants]. This suit was not filed until December 30, 2010.”
On March 8, 2012, Jett filed her notice of appeal to this Court.
II.
Jett argues that the trial court erred by entering a summary judgment in favor of the Wooten defendants. We review her claim pursuant to the following standard of review:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12-21-12, Ala.Code 1975. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
Jett argues that the trial court erred in concluding that her claims against the Wooten defendants were barred by the statute of limitations because, she argues, the trial court failed to give effect to § 6-2-3, Ala.Code 1975, which generally provides that, if a defendant has acted fraudulently to conceal a claim, the statute of limitations applying to that claim will not begin to run until the plaintiff discovers, or should have discovered, the claim. The ALSLA specifically provides that § 6-2-3 *854 applies to legal-malpractice claims, as the Court of Civil Appeals explained in Rutledge v. Freeman, 914 So.2d 364, 368-69 (Ala.Civ.App.2004):
“Section 6-5-574(a) sets out a two-year limitations period for the commencement of all legal-service-liability actions. Section 6-5-574(b) states that
“ ‘[sjubsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitations for the commencement of actions, namely, Section[ ] ... 6-2-8 ...; provided, that notwithstanding any provisions of such section[ ], no action shall be commenced more than four years after the act, omission, or failure complained of ..... ’
“The supreme court has recognized that the savings provision of § 6-2-3 applies in ALSLA actions. See Dennis [v. Northcutt], 887 So.2d [219,] 221 n. 4 [ (Ala.2004) ]; Ex parte Seabol, 782 So.2d [212,] 214-15 [ (Ala.2000) ]; and Leighton Ave. Office Plaza, Ltd. v. Campbell, 584 So.2d 1340, 1344 (Ala.1991). Section 6-2-3 reads as follows:
“‘In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.’
“Although the wording of § 6-2-3 indicates that it applies only to fraud actions, that section and its predecessor have long been held to apply to any cause of action that has been fraudulently concealed from a plaintiff. See Tonsmeire v. Tonsmeire, 285 Ala. 454, 457, 233 So.2d 465, 467 (1970); Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73 (1941); and Hudson v. Moore, 239 Ala. 130, 133, 194 So. 147, 149 (1940), superseded by statute on other grounds, as noted in Ex parte Sonnier, 707 So.2d 635, 638 (Ala.1997); see also Dennis, 887 So.2d at 221 n. 4 (indicating that § 6-2-3 applies to toll the statute of limitations in legal-malpractice claims, but not deciding whether § 6-2-3 applied because the six-month tolling provision of § 6-5-574(a) applied to make the plaintiffs claim timely).”
Jett accordingly argues that § 6-2-3 applies in this case and that her action against the Wooten defendants was timely filed because, she argues, there is evidence in the record — specifically her deposition testimony — indicating that Wooten concealed from her the fact that he had not initiated legal actions on her behalf against the YMCA and Brookwood and because she initiated her action against the Wooten defendants on December 30, 2010, within the two-year period following the date (March 13, 2009) she alleges she first learned of his failure to file those actions.
The Wooten defendants argue that § 6-2-3 should not be applied in this case for two reasons. First, they argue that Jett failed to raise this argument or to produce any evidence of fraudulent concealment in the trial court; thus, they argue, the issue is outside the scope of this Court’s review. See Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992) (“[A]n issue raised on appeal must have first been presented to and ruled on by the trial court.”). However, even while making this argument, the Wooten defendants acknowledge that Jett did in fact raise this argument in the trial court, because they state in their brief that “the word ‘fraud’ appears nowhere in the record until [Jett] realized in responding to [our] second motion for summary judgment of the fatal flaw.” Wooten defendants’ brief, p. 21. In fact, Jett’s response to the Wooten defendants’ second motion for a summary judgment contained the following argu *855 ment urging the trial court to apply § 6-2-3:
“[Jett] learned on or about March 2009 that [Wooten] had not timely commenced a lawsuit against the YMCA and/or Brookwood Medical Center before the statute ran.... When [Jett] learned of the misrepresentation of the material fact, [Jett] had two years from the date of the discovery of the material fact and/or fraud or deception to commence an action in court. Here, [Jett] learned of this deception in March of 2009; the statute would have run on or about March 2011. [Jett] commenced this action in December 2010, which is •within the time frame for this case to be filed.
[[Image here]]
“Therefore, in the present action [Jett] has filed this action within the allowed time frame provide[d] by Code of Alabama [1975,] § 6-2-3: ‘In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.’
“[Jett’s] time of action would have run on or about March 2011. Therefore [the Wooten defendants’] assertion that [Jett’s] case was filed erroneously is grossly incorrect and is due to be denied.”
The Wooten defendants appear to believe that Jett’s invocation of § 6-2-3 in her response to their second motion for a summary judgment somehow came too late; however, because they did not assert a statute-of-limitations defense until that second motion for a summary judgment, Jett’s citation of § 6-2-3 for the first time in her response to that motion was appropriate. Moreover, the Wooten defendants have cited no authority that would indicate that Jett waived the right to invoke § 6-2-3 by failing to cite it earlier. Finally, Jett’s argument that § 6-2-3 applies in this case is supported by her deposition testimony indicating that Wooten misled her with regard to whether legal actions had been filed against the YMCA and Brookwood. The issue whether § 6-2-3 should be given effect is accordingly properly before this Court.
The Wooten defendants next argue that § 6-2-3 should not apply because Jett acknowledges that she discovered on March 13, 2009, that Wooten had not filed actions on her behalf against the YMCA or Brookwood — at which point she still had approximately a year in which to file a legal-malpractice claim against the Wooten defendants before the limitations period of § 6-5-574 expired. However, as the Court of Civil Appeals explained in Rutledge when it rejected a similar argument, the savings provision of § 6-2-3 extends the statute of limitations for two years after the discovery of a cause of action even if the statute of limitations has not yet run on that cause of action when it is discovered:
“Despite [the appellee’s] argument to the contrary, § 6-2-3 does not require the applicable limitations period to have expired on the plaintiffs claim; rather, it provides an additional two years for the plaintiff to file an action when the plaintiff discovers the cause of action less than two years before the expiration of the applicable limitations period. See Butler v. Guaranty Sav. & Loan, 251 Ala. 449, 451, 37 So.2d 638, 639 (1948); Van Antwerp [v. Van Antwerp], 242 Ala. [92,] 100, 5 So.2d [73,] 80 [ (1941) ]. The Supreme Court stated the purpose of the predecessor to § 6-2-3, which granted plaintiffs an additional one year after the discovery of the fraud to file an action, as follows:
*856 “ ‘Section 42, Title 7, Code of 1940 [the predecessor to § 6-2-3], does not fix a limitation in the first instance. It does not cut down the limitation fixed in some other statute. It serves no purpose where plaintiff discovered the existence of his right of action as much as one year before it was barred by an appropriate statute. But when plaintiff discovered the existence of his right of action after it has become completely barred or within one year before it is so barred, this statute makes provision for a limitation of one year from the date of such discovery, provided its discovery was concealed by some activity of defendant, amounting to a fraud.’
“Van Antwerp, 242 Ala. at 100, 5 So.2d at 80. In 1985, § 6-2-3 was amended to provide an additional two years during which a plaintiff could file an action. Thus, to paraphrase Van Antwerp, under § 6-2-3 a plaintiff who does not discover his cause of action until two years before its being barred by the applicable statute of limitations has two years from the date he discovers, or should have discovered, the fraud to file his action.
“[The appellee] calls our attention to Williams v. Mertz, 549 So.2d 87 (Ala.1989), in which the supreme court stated that ‘[s]ection 6-2-3 does not even apply to an action until the expiration of the time allowed by the applicable statute of limitations would appear to have created a bar to the suit,’ Williams, 549 So.2d at 88, and that ‘[§ 6-2-3] does not act as a limit upon an action when the applicable limitations period has not run.’ Id. at 89. Those statements run counter to the purpose and operation of the statute as expressed in Van Antwerp. In addition, and even more importantly, based on the fact that § 6-2-3 did not apply to toll the statute of limitations in Williams because there was no statute of limitations to toll in that action to quiet title, id. at 88-89, the statements quoted above are dicta.
“Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala.1981), illustrates how the savings provision of § 6-2-3 works. In Ryan, the plaintiff, who on January 8, 1980, had purchased a previously leased automobile relying on the salesman’s representation that it delivered a certain gas mileage, sued the car dealership on February 13,1981. Ryan, 409 So.2d at 785. The dealership argued that the then one-year statute of limitations for fraud barred her action. Id. at 786. The plaintiff alleged that she had discovered that she had been defrauded on February 19, 1980, after having the car serviced because she originally thought it might have a mechanical problem. Id. at 786. She said that she did not realize that the salesman’s statements were false until the mechanic told her that the automobile was not designed to and would never get the mileage that had been represented to her. Id. The Supreme Court reversed the summary judgment based on the statute-of-limitations defense that the trial court had entered in the dealership’s favor. Id. The Court noted that there existed a question of fact regarding when the plaintiff discovered that her cause of action for fraud existed. Id.
“Notably, the one-year statute of limitations had not yet run when the plaintiff in Ryan discovered her cause of action. ‘Alabama does recognize that a fraudulent concealment by a defendant tolls the running of the statute until the tort or injury is discovered or could have been discovered by due diligence.’ Garrett v. Raytheon Co., 368 So.2d 516, 521 (Ala.1979), superseded by statute on other grounds, as noted in Johnson v. Garlock, Inc., 682 So.2d 25, 26 (Ala.1996). Thus, based upon that general principle *857 and the construction of § 6-2-8 and its predecessor found in cases like Van Antwerp and Ryan, the savings provision of § 6-2-3 extends the statute of limitations for a period of two years after the discovery of the cause of action even if the statute of limitations has not yet run on that cause of action. The reading of the statute urged by [the appellee] — that the savings provision of § 6-2-3 is not applicable until the statute of limitations has already expired— would make filing suit impossible for a plaintiff who discovers a fraudulently concealed cause of action mere hours before the applicable limitations period is due to expire. Certainly, such a result would not comport with the purposes of tolling principles generally. Thus, we reject [the appellee’s] argument that § 6-2-3 has no application here.”
914 So.2d at 369-70. Thus, the Wooten defendants’ argument that § 6-2-3 should not apply in this case because the limitations period had not yet run when Jett discovered her cause of action is without merit.
IV.
Jett filed a legal-malpractice action against the Wooten defendants as a result of their failure to initiate legal actions on her behalf against the YMCA and Brook-wood before the limitations period expired on those claims on March 13, 2008, and May 6, 2008, respectively. The trial court thereafter entered a summary judgment in favor of the Wooten defendants, holding that Jett’s claims against them were themselves barred by the two-year statute of limitations that applies to ALSLA claims because Jett did not initiate her action until December 30, 2010, more than two years after March 13, 2008, and May 6, 2008. We now reverse that judgment, holding that § 6-2-3 tolled the statute of limitations and that the two-year period in which Jett could initiate an action against the Wooten defendants based on Wooten’s failure to file actions against the YMCA and Brookwood did not begin to run until March 13, 2009, when Jett discovered that Wooten had not filed the legal actions she alleges he told her he had filed. Accordingly, her lawsuit against the Wooten defendants, initiated December 30, 2010, was timely filed. The judgment of the trial court is accordingly reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MALONE, C.J., and PARKER, SHAW, and WISE, JJ., concur.